## JAMES v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 215.   Argued April 6, 9, 1906.—Decided May 21, 1906.

Without deciding whether the Supreme Court of the District of Columbia is or is not an inferior court of the United States within the meaning of § 1 of Art. III of the Constitution of the United States, it is a court of the United States within the meaning of § 714, Rev. Stat., the provisions whereof apply to judges of that, and of any other, court of the United States holding office by life tenure. In thus deciding the court follows the evidently correct construction given to the statute by the legislative and executive departments of the Government since the original enactment of the statute.

A justice of the Supreme Court of the District of Columbia retiring during the year ending June 30, 1893, is entitled to receive during his retirement five thousand dollars per annum that being the salary of the office as fixed by the appropriation act for the previous year, and the appropriation act for the year ending June 30, 1893, while only appropriating a lump sum for all the justices of the court amounting to four thousand dollars each will not be construed as reducing the salary to that amount in view of the subsequent deficiency appropriation act appropriating an amount sufficient to make the salaries for that year five thousand dollars.

Congress has power wholly irrespective of prior legislation retroactively to fix the salary payable to a justice of the Supreme Court of the District of Columbia and as the effect of the act of 1895 was a determination of Congress that the salary of the justices of that court for the year ending June 30, 1893, was five thousand dollars this court cannot disregard the retroactive effect of the statute.

THE facts are stated in the opinion.

Mr. Morgan H. Beach, with whom Mr. A. A. Hoehling, Jr., was on the brief, for appellant.

Mr. Josiah A. Van Orsdel, Assistant Attorney General, with whom Mr. Felix Braningan, Assistant Attorney, was on the brief, for the United States.

MR. JUSTICE WHITE delivered the opinion of the court.

Charles P. James was an Associate Justice of the Supreme Court of the District of Columbia. On December 1, 1892, being over seventy years of age and having served for more than ten years, he resigned his office. He died on August 8, 1899. This suit was brought by the administratrix of the estate of Justice James, on June 30, 1900, to recover $6,688.90, on the ground that the salary of Justice James at the time of his resignation was five thousand dollars per annum, and that after his resignation and up to the time of his death he was paid, under the provisions of Rev. Stat. § 714, only at the rate of four thousand dollars per annum, upon the erroneous theory that that sum was the rate of salary fixed by law at the time of the resignation. From a judgment rejecting the claim, 38 C. Cl. 615, this appeal was prosecuted.

To comprehend the contentions pressed at bar it is necessary briefly to refer to the statutes fixing the salary of the Justices of the Supreme Court of the District of Columbia in force at the time of and after the date of the resignation of Justice James.

By the second section of the act of June 1, 1866, 14 Stat. 54, the annual salary of the Chief Justice of the Supreme Court of the District of Columbia was fixed at four thousand five hundred dollars, and of each Associate Justice at four thousand dollars. This provision continued in force up to and including the fiscal year ending June 30, 1891. The act, 26 Stat. 908, 947, making appropriations for judicial salaries, etc., for the fiscal year commencing July 1, 1891, and ending June 30, 1892, contained the following provision:

"For salaries of the Chief Justice of the Supreme Court of the District of Columbia and the five Associate Judges, at the rate of five thousand dollars per annum each; thirty thousand dollars."

The law containing this provision had the enacting clause usually found in appropriation acts, declaring that the appro-

priations were made in full compensation for the services of the fiscal year to which the acts related, and the last section of the act repealed all acts or parts of acts inconsistent or in conflict with its provisions. Under this act Justice James was paid for the fiscal year referred to a salary at the rate of five thousand dollars per annum.

The appropriation act for the following fiscal year, commencing July 1, 1892, and ending June 30, 1893, contained an appropriation of a lump sum of $24,500 "for salaries of the Chief Justice of the Supreme Court of the District of Columbia and five Associate Judges." The sum thus appropriated was only adequate to pay the salaries of the Associate Justices at the rate of four thousand dollars per annum each, and this act also contained the general enacting and concluding clauses above referred to.

For the five months of the year covered by this last act, up to his resignation, viz., from July 1, 1892, to December 1, 1892, Justice James was paid at the rate of four thousand dollars per annum. Shortly after his resignation, before the expiration of the fiscal year covered by the lump appropriation for the year commencing July 1, 1892, and ending June 30, 1893, Congress, by the act of February 9, 1893, 27 Stat. 434, created the Court of Appeals of the District of Columbia. By the terms of the act its provisions were not to take effect until April 3, 1893. It was provided in the fourteenth section of the act that "Justices of the Supreme Court of the District of Columbia shall hereafter receive an annual salary of five thousand dollars each payable quarterly at the Treasury of the United States." As the lump appropriation made in the act above referred to for the fiscal year ending June 30, 1893, was adequate only to pay the salaries at the rate of four thousand dollars per annum, it followed that the existing appropriation was not adequate to pay the salaries of the Justices of the Supreme Court of the District of Columbia at the rate of five thousand dollars per annum from the date fixed for the going into effect of the Court of Appeals act, that is, from April 3, 1893, to the end of the

fiscal year. To remedy this, in the deficiency appropriation act of March 3, 1893, 27 Stat. 653, there was appropriated a sum which, added to the previous lump appropriation, was adequate to pay to the Justices of the Supreme Court of the District a salary at the rate of five thousand dollars per annum from April 3, 1893, to the end of the fiscal year. For the following fiscal years, it is conceded, regular appropriations were made for the salaries of the Justices of the Supreme Court of the District of Columbia at the rate of five thousand dollars per annum. The deficiency appropriation act of March 2, 1895, contained an appropriation, 28 Stat. 843, 851, "to pay the Chief Justice and five Associate Justices of the Supreme Court of the District of Columbia the difference between the rate of compensation received by them and five thousand dollars per annum for the fiscal year eighteen hundred and ninety-three." In virtue of this appropriation Justice James was paid for the portion of the fiscal year (from July 1, 1892, to June 30, 1893) covered by the lump appropriation, that is, up to the time of his resignation, on December 1, 1892, a sum which, added to the four thousand dollars appropriated in the lump appropriation act for that fiscal year, made his salary at the rate of five thousand dollars per annum.

On behalf of the administratrix the contention is that the appropriation at the rate of five thousand dollars per annum made for the fiscal year from July 1, 1891, to June 30, 1892, operated as an increase of the salary to that amount, and that this increase was not repealed by the subsequent legislation, or, if intended to be repealed, the repealing act was void, because the Supreme Court of the District of Columbia was an inferior court of the United States within the meaning of section 1, article III, of the Constitution, and therefore, as Congress had increased the salary to five thousand dollars, it was without power to reduce it.

The opposing contention is that the only effect of the appropriation for the fiscal year ending June 30, 1892, was to temporarily raise the salary for that year, and that as in the sub-

sequent year only a lump sum adequate to pay at the rate of four thousand dollars per annum was appropriated, the general law of 1866 governed, and that amount became the salary which by law was payable to Justice James at the time of his resignation. And it is insisted that Congress was vested with power to increase and diminish at pleasure the compensation paid to a Justice of the Supreme Court of the District of Columbia, because that court was not one of the courts referred to in section 1 of article III of the Constitution. Indeed, irrespective of the question of what was the rate of salary payable to Justice James at the time of his resignation, the Government contends that the judgment below should be affirmed, because in any event the Supreme Court of the District of Columbia was not a court of the United States within the intendment of Rev. Stat. § 714, and in consequence the judges of that court were not entitled on resignation to the benefits intended to be conferred thereby.

From the view we take of the case it is unnecessary to consider the constitutional questions which are raised by the opposing parties. We say this because if the result of an analysis of the legislation of Congress be to establish that the salary by law payable to Justice James at the time of his resignation was five thousand dollars per annum, it will be superfluous on that branch of the case to intimate any opinion as to whether the Supreme Court of the District of Columbia is a court of the United States within the meaning of section 1 of article III of the Constitution. Likewise, on the second branch of the case, if it be concluded that the Justices of the Supreme Court of the District of Columbia are embraced within the provisions of section 714 of the Revised Statutes, irrespective of whether that court is or is not an inferior court within the meaning of the constitutional provision above referred to, it will be likewise superfluous to consider the question of constitutional power.

It is not disputed that by the express terms of the appropriation act for the fiscal year ending June 30, 1892, the sal-

aries of the Justices of the Supreme Court of the District of Columbia were increased to five thousand dollars per annum, at least for that year. As, however, the appropriation for the next fiscal year—the one in which Justice James resigned—was only of a lump sum adequate to pay four thousand dollars per annum, it is insisted that that amount was the salary payable to Justice James at the date of his resignation. Whether, if the act appropriating the lump sum stood alone, it would sustain the contention based upon it, we are not called upon to decide, since we may not merely consider the lump appropriation, but must also take into view the act of March 2, 1895, 28 Stat. 851, relating to the identical subject, viz., the salary for the fiscal year ending June 30, 1893, payable by law to the Justices of the Supreme Court of the District.

The act of March 2, 1895, appropriated to pay as a deficiency to the Chief Justice and the five Associate Justices of the Supreme Court of the District of Columbia a sum representing the difference between the rate of compensation theretofore received by them and five thousand dollars per annum for the fiscal year 1893, the year in which Justice James resigned. Now that act is susceptible of only one of two constructions, viz., either that it was a legislative declaration to the effect that the increase of salary operated by the specific provision contained in the appropriation act for the fiscal year ending June 30, 1892, was a permanent provision and had not been repealed by the lump appropriation made in the act of the following year, or that it was intended retroactively to fix the salaries of the Justices of the Supreme Court of the District of Columbia for the fiscal year 1893 at the sum of five thousand dollars, a power which Congress undoubtedly possessed. *Stockdale* v. *Insurance Companies*, 20 Wall. 323, 331, 332. Whichever view is adopted the legal proposition inevitably arises that the salary of the Justices of the Supreme Court of the District of Columbia payable by law for the fiscal year of 1893 was the sum of five thousand dollars. Indeed, as a matter of fact under the operation of the deficiency appropriation, the salary

actually paid to Justice James for the portion of the fiscal year up to the time of his resignation was at the rate of five thousand dollars per annum. It is no answer to this deduction to say that as the effects just indicated arose from the act of 1895, therefore they could not have existed in the fiscal year of 1893 when Justice James resigned; for this would be but to deny efficacy to the act of 1895, either as a Congressional interpretation of the prior legislation or as a retroactive statute fixing the salaries for the year 1893.

As Congress had the power, wholly irrespective of the prior legislation, retroactively to fix the salary payable to a Justice of the Supreme Court of the District of Columbia for an antecedent year, and as the effect of the act of 1895 was necessarily a determination by Congress that the salary payable to Justice James for the year during which he resigned was five thousand dollars, we are not at liberty to disregard the retroactive effect of the act of Congress by holding that the salary payable to him by law for the year during which he retired was a less sum than the amount which Congress, in the exercise of its plenary authority in the premises, has declared was the lawful salary.

The salary of Justice James for the period just referred to being then at the rate of five thousand dollars per annum, it is obvious that he was within the terms of Rev. Stat. § 714, if the provisions of that section applied to Justices of the Supreme Court of the District of Columbia. That section is as follows:

"Sec. 714. When any judge of any court of the United States resigns his office, after having held his commission as such at least ten years, and having attained the age of seventy years, he shall, during the residue of his natural life, receive the same salary which was by law payable to him at the time of his resignation."

On behalf of the Government it is, as we have said, contended that Justice James was not entitled to the benefit of this statute, because that statute only embraced judges of such courts of the United States as were within the purview of section 1

of article III of the Constitution, and it is insisted the Supreme Court of the District of Columbia was not so embraced. We think the premise upon which this contention rests is wholly devoid of merit. The words of the statute, "when any judge of any court of the United States resigns his office," are broad enough to embrace all courts created by the United States, without taking into view the particular constitutional authority which was exercised in such creation. It is true that the statute excludes the conception that it was intended to apply to judges of courts created by Congress when the term of office was of a limited duration. Conversely, however, in our opinion, the text of the statute leaves no room for question that its provisions were intended to apply to a judge of any court of the United States holding his office by a life tenure, such as during good behavior. Indeed, as it is conceded at bar, that from the period of the enactment of the statute down to the present time it has, without interruption or deviation, been construed by the legislative and executive departments of the Government as applicable to Justices of the Supreme Court of the District of Columbia, we do not deem it necessary to determine whether the Supreme Court of the District of Columbia is an inferior court within the meaning of section 1 of article III of the Constitution, since even if it be not a court of that character it is nevertheless a court of the United States within the meaning of Rev. Stat. § 714.

*The judgment is reversed and the case remanded with directions to enter a judgment for the petitioner.*