## EX PARTE BAKELITE CORPORATION.

No. 17 Original. Argued January 2, 3, 1929.—Decided May 20, 1929.

Mr. *Samuel M. Richardson,* with whom *Mr. Albert MacC. Barnes, Jr.,* was on the brief, for petitioner.

440

*Attorney General Mitchell,* with whom *Mr. Robert P. Reeder,* of the Department of Justice, was on the brief, for respondent.

*Mr. Meyer Kraushaar* participated in the oral argument and filed a brief on behalf of Frischer & Co., Inc., Randes Importing Co., Transatlantic Clock & Watch Co., Inc., and Western Briar Pipe Company, interveners, by special leave of Court.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a petition for a writ of prohibition to the Court of Customs Appeals prohibiting it from entertaining an appeal from findings of the Tariff Commission in a proceeding begun and conducted under § 316 of the Tariff Act of 1922, c. 356, 42 Stat. 858, 943; §§ 174–179, Title 19, U. S. C. A rule to show cause was issued; return was made to the rule; and a hearing has been had on the petition and return.

Section 316 of the Tariff Act is long and not happily drafted. A summary of it will suffice for present purposes. It is designed to protect domestic industry and trade against " unfair methods of competition and unfair acts " in the importation of articles into the United States, and in their sale after importation. To that end it empowers the President, whenever the existence of any such unfair methods or acts is established to his satisfaction, to deal with them by fixing an additional duty upon the importation of the articles to which the unfair practice relates, or, if he is satisfied the unfairness is extreme, by directing that the articles be excluded from entry.

The section provides that, " to assist the President " in making decisions thereunder, the Tariff Commission shall investigate allegations of unfair practice, conduct hearings, receive evidence, and make findings and recommendations, subject to a right in the importer or con-

signee, if the findings be against him, to appeal to the Court of Customs Appeals on questions of law affecting the findings. There is also a provision purporting to subject the decision of that court to review by this Court upon certiorari. Ultimately the commission is required to transmit its findings and recommendations, with a transcript of the evidence, to the President so that he may consider the matter and act thereon.

A further provision declares that " any additional duty or any refusal of entry under this section shall continue in effect until the President shall find and instruct the Secretary of the Treasury that the conditions which led to the assessment of such additional duty or refusal of entry no longer exist."

The present petitioner, the Bakelite Corporation, desiring to invoke action under that section, filed with the Tariff Commission a sworn complaint charging unfair methods and acts in the importation and subsequent sale of certain articles and alleging a resulting injury to its domestic business of manufacturing and selling similar articles. The commission entertained the complaint, gave public notice thereof and conducted a hearing, in which interested importers appeared and presented evidence claimed to be in refutation of the charge. The commission made findings sustaining the charge and recommended that the articles to which the unfair practice related be excluded from entry. The importers appealed to the Court of Customs Appeals, where the Bakelite Corporation challenged the court's jurisdiction on constitutional grounds. The court upheld its jurisdiction and announced its purpose to entertain the appeal. Thereupon the Bakelite Corporation presented to this Court its petition for a writ of prohibition. Pending a decision on the petition further proceedings on the appeal have been suspended.

The grounds on which the jurisdiction of the Court of Customs Appeals was challenged in that court, and on which a writ of prohibition is sought here, are:

1. That the Court of Customs Appeals is an inferior court created by Congress under section 1 of Article III of the Constitution, and as such it can have no jurisdiction of any proceeding which is not a case or controversy within the meaning of section 2 of the same Article.

2. That the proceeding presented by the appeal from the Tariff Commission is not a case or controversy in the sense of that section, but is merely an advisory proceeding in aid of executive action.

The Court of Customs Appeals considered these grounds in the order just stated and by its ruling sustained the first and rejected the second. 16 Ct. Cust. Appls. 191, 53 Treasury Decisions 716.

In this Court counsel have addressed arguments not only to the two questions bearing on the jurisdiction of the Court of Customs Appeals, but also to the question whether, if that court be exceeding its jurisdiction, this Court has power to issue to it a writ of prohibition to arrest the unauthorized proceedings.

The power of this Court to issue writs of prohibition never has been clearly defined by statute [1] or by decisions.[2] And the existence of the power in a situation like the present is not free from doubt. But the doubt need not be resolved now, for, assuming that the power exists, there is here, as will appear later on, no tenable basis for exercising it. In such a case it is admissible, and is common practice, to pass the question of power and to deny the writ because without warrant in other respects.[3]

---

[1] See Rev. Stat. §§ 688, 716; U. S. C., Title 28, §§ 342, 377.

[2] See *Ex parte City Bank of New Orleans,* 3 How. 292, 311, 322; *Ex parte Joins,* 191 U. S. 93, 102, and cases cited; *Ex parte United States,* 226 U. S. 420.

[3] *Ex parte City Bank of New Orleans,* 3 How. 292, 311, 322; *Smith* v. *Whitney,* 116 U. S. 167, 175–176; *Ex parte Joins,* 191 U. S.

While Article III of the Constitution declares, in section 1, that the judicial power of the United States shall be vested in one Supreme Court and in " such inferior courts as the Congress may from time to time ordain and establish," and prescribes, in section 2, that this power shall extend to cases and controversies of certain enumerated classes, it long has been settled that Article III does not express the full authority of Congress to create courts, and that other Articles invest Congress with powers in the exertion of which it may create inferior courts and clothe them with functions deemed essential or helpful in carrying those powers into execution.  But there is a difference between the two classes of courts.  Those established under the specific power given in section 2 of Article III are called constitutional courts.  They share in the exercise of the judicial power defined in that section, can be invested with no other jurisdiction, and have judges who hold office during good behavior, with no power in Congress to provide otherwise.  On the other hand, those created by Congress in the exertion of other powers are called legislative courts.  Their functions always are directed to the execution of one or more of such powers and are prescribed by Congress independently of section 2 of Article III; and their judges hold for such term as Congress prescribes, whether it be a fixed period of years or during good behavior.

The first pronouncement on the subject by this Court was in *American Insurance Co.* v. *Canter,* 1 Pet. 511, where the status and jurisdiction of courts created by Congress for the Territory of Florida were drawn in ques-

---

93, 102; *In re Rice,* 155 U. S. 396; *In re Huguley Manufacturing Co.,* 184 U. S. 297; *Ex parte Oklahoma,* 220 U. S. 191; *Ex parte Oklahoma (No. 2),* 220 U. S. 210; *Ex parte Southwestern Surety Insurance Co.,* 247 U. S. 19; *Ex parte Tiffany,* 252 U. S. 32; *Ex parte Peterson,* 253 U. S. 300; *Ex parte Chicago, Rock Island & Pacific Ry. Co.,* 255 U. S. 273; *Ex parte United States,* 263 U. S. 389,

450

tion.  Chief Justice Marshall, speaking for the court, said,
p. 546:

"These Courts, then, are not constitutional Courts, in
which the judicial power conferred by the Constitution
on the general government can be deposited.  They are
incapable of receiving it.  They are legislative Courts,
created in virtue of the general right of sovereignty which
exists in the government, or in virtue of that clause which
enables Congress to make all needful rules and regulations
respecting the territory belonging to the United States.
The jurisdiction with which they are invested, is not a
part of that judicial power which is defined in the 3d
article of the Constitution, but is conferred by Congress,
in the execution of those general powers which that body
possesses over the territories of the United States."

That ruling has been accepted and applied from that
time to the present in cases relating to territorial courts.[4]

A like view has been taken of the status and jurisdiction
of the courts provided by Congress for the District of
Columbia.  These courts, this Court has held, are created
in virtue of the power of Congress " to exercise exclusive
legislation " over the district made the seat of the gov-
ernment of the United States, are legislative rather than
constitutional courts, and may be clothed with the author-
ity and charged with the duty of giving advisory deci-
sions in proceedings which are not cases or controversies
within the meaning of Article III, but are merely in aid
of legislative or executive action, and therefore outside
the admissible jurisdiction of courts established under
that Article.[5]

---

[4] *Benner* v. *Porter*, 9 How. 235, 242; *Clinton* v. *Englebrecht*, 13
Wall. 434, 447; *Hornbuckle* v. *Toombs*, 18 Wall. 648, 655; *Good* v.
*Martin*, 95 U. S. 90, 98; *Reynolds* v. *United States*, 98 U. S. 145, 154;
*The City of Panama*, 101 U. S. 453, 460; *McAllister* v. *United States*,
141 U. S. 174, 180 *et seq.*; *Romeu* v. *Todd*, 206 U. S. 358, 368.

[5] *Keller* v. *Potomac Electric Power Co.*, 261 U. S. 428, 442–444;
*Postum Cereal Co.* v. *California Fig Nut Co.*, 272 U. S. 693, 700.

The United States Court for China and the consular courts are legislative courts created as a means of carrying into effect powers conferred by the Constitution respecting treaties and commerce with foreign countries. They exercise their functions within particular districts in foreign territory and are invested with a large measure of jurisdiction over American citizens in those districts.[6] The authority of Congress to create them and to clothe them with such jurisdiction has been upheld by this Court and is well recognized.[7]

Legislative courts also may be created as special tribunals to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it. The mode of determining matters of this class is completely within congressional control. Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals.[8]

And see *Butterworth* v. *Hoe*, 112 U. S. 50, 60; *United States* v. *Duell*, 172 U. S. 576, 582–583.

[6] See Title 19, chapters 2 and 3, U. S. C.

[7] *In re Ross*, 140 U. S. 453; *American China Development Co.* v. *Boyd*, 148 Fed. 258; *Biddle* v. *United States*, 156 Fed. 759; *Cunningham* v. *Rodgers*, 171 Fed. 835; *Swayne & Hoyt* v. *Everett*, 255 Fed. 71; *Fleming* v. *United States*, 279 Fed. 613; *Wulfsohn* v. *Russo-Asiatic Bank*, 11 F. (2d) 715; 2 Moore's Digest International Law, § 262; 1 Hyde International Law, § 264.

[8] *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 280, 284; *Grisar* v. *McDowell*, 6 Wall. 363, 379; *Auffmordt* v. *Hedden*, 137 U. S. 310, 329; *In re Fassett*, 142 U. S. 479, 486–487; *Nishimura Ekiu* v. *United States*, 142 U. S. 651, 659–660; *Astiazaran* v. *Santa Rita Land & Mining Co.*, 148 U. S. 80, 81–83; *Passavant* v. *United States*, 148 U. S. 214, 219; *Fong Yue Ting* v. *United States*, 149 U. S. 698, 714–715; *United States* v. *Coe*, 155 U. S. 76, 84; *Wallace* v. *Adams*, 204 U. S. 415, 423; *Gordon* v. *United States*, 117 U. S. 697, 699; *La Abra Silver Mining Co.* v. *United States*, 175 U. S. 423, 459–461; *United States* v. *Babcock*, 250 U. S. 328, 331; *Luckenbach S. S. Co.* v. *United States*, 272 U. S. 533, 536.

Conspicuous among such matters are claims against the United States. These may arise in many ways and may be for money, lands or other things. They all admi' of legislative or executive determination, and yet from their nature are susceptible of determination by courts; but no court can have cognizance of them except as Congress makes specific provision therefor. Nor do claimants have any right to sue on them unless Congress consents; and Congress may attach to its consent such conditions as it deems proper, even to requiring that the suits be brought in a legislative court specially created to consider them.[9]

The Court of Claims is such a court. It was created, and has been maintained, as a special tribunal to examine and determine claims for money against the United States. This is a function which belongs primarily to Congress as an incident of its power to pay the debts of the United States. But the function is one which Congress has a discretion either to exercise directly or to delegate to other agencies.

For sixty-five years following the adoption of the Constitution Congress made it a practice not only to determine various claims itself but also to commit the determination of many to the executive departments. In time, as claims multiplied, that practice subjected Congress and those departments to a heavy burden. To lessen that burden Congress created the Court of Claims and delegated to it the examination and determination of all claims within stated classes.[10] Other claims have since been included in the delegation and some have been excluded. But the court is still what Congress at the outset declared it

[9] *United States* v. *Ferreira,* 13 How. 40, 47; *De Groot* v. *United States,* 5 Wall. 419, 431–433; *Ex parte Russell,* 13 Wall. 646, 668; *McElrath* v. *United States,* 102 U. S. 426, 440; *United States* v. *Louisiana,* 123 U. S. 32, 36–37; *Schillinger* v. *United States,* 155 U. S. 163, 166; *Luckenbach S. S. Co.* v. *United States,* 272 U. S. 533, 536.

[10] Act Feb. 24, 1855, c. 122, 10 Stat. 612.

should be—"a court for the investigation of claims against the United States." The matters made cognizable therein include nothing which inherently or necessarily requires judicial determination. On the contrary, all are matters which are susceptible of legislative or executive determination and can have no other save under and in conformity with permissive legislation by Congress.

The nature of the proceedings in the Court of Claims and the power of Congress over them are illustrated in *McElrath* v. *United States,* 102 U. S. 426, where particular attention was given to the statutory provisions authorizing that court, when passing on claims against the government, to consider and determine any asserted set-offs or counter-claims, and directing that all issues of fact be tried by the court without a jury. The claimant in that case objected that these provisions were in conflict with the Seventh Amendment to the Constitution, which preserves the right of trial by jury in suits at common law where the value in controversy exceeds twenty dollars. This Court disposed of the objection by saying (p. 440):

" There is nothing in these provisions which violates either the letter or spirit of the Seventh Amendment. Suits against the government in the Court of Claims, whether reference be had to the claimant's demand, or to the defence, or to any set-off, or counter-claim which the government may assert, are not controlled by the Seventh Amendment. They are not suits at common law within its true meaning. The government cannot be sued, except with its own consent. It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the

government in the special court organized for that purpose, he may be met with a set-off, counter-claim or other demand of the government, upon which judgment may go against him, without the intervention of a jury, if the court, upon the whole case, is of opinion that the government is entitled to such judgment. If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the government to the exercise of the privilege."

While what has been said of the creation and special function of the court definitely reflects its status as a legislative court, there is propriety in mentioning the fact that Congress always has treated it as having that status. From the outset Congress has required it to give merely advisory decisions on many matters. Under the act creating it all of its decisions were to be of that nature.[11] Afterwards some were to have effect as binding judgments, but others were still to be merely advisory.[12] This is true at the present time.[13] A duty to give decisions which are advisory only, and so without force as judicial judgments, may be laid on a legislative court, but not on a constitutional court established under Article III.[14]

In *Gordon* v. *United States,* 117 U. S. 697, and again in *In re Sanborn,* 148 U. S. 222, this Court plainly was of opinion that the Court of Claims is a legislative court

---

[11] Act Feb. 24, 1855, c. 122, §§ 7–9, 10 Stat. 612.

[12] Acts March 3, 1863, c. 92, §§ 3, 5, and 7, 12 Stat. 765; March 17, 1866, c. 19, 14 Stat. 9; March 3, 1883, c. 116, §§ 1 and 2, 22 Stat. 485; Jan. 20, 1885, c. 25, § 6, 23 Stat. 283; March 3, 1887, c. 359, §§ 12–14, 24 Stat. 505.

[13] Title 28, §§ 254, 257, U. S. C.

[14] *United States* v. *Ferreira,* 13 How. 40, 48–51; *Gordon* v. *United States,* 117 U. S. 697; *In re Sanborn,* 148 U. S. 222; *Muskrat* v. *United States,* 219 U. S. 346; *Keller* v. *Potomac Electric Co.,* 261 U. S. 428, 442–444; *Postum Cereal Co.* v. *California Fig Nut Co.,* 272 U. S. 693, 698–691; *Liberty Warehouse Co.* v. *Grannis,* 273 U. S. 70, 74; *Fidelity National Bank* v. *Swope,* 274 U. S. 123, 134; *Willing* v. *Chicago Auditorium,* 277 U. S. 274, 289.

specially created to consider claims for money against the United States, and on that basis distinctly recognized that Congress may require it to give advisory decisions. And in *United States* v. *Klein,* 13 Wall. 128, 144–145, this Court described it as having all the functions of a court, but being, as respects its organization and existence, undoubtedly and completely under the control of Congress.

In the present case the court below regarded the recent decision in *Miles* v. *Graham,* 268 U. S. 501, as disapproving what was said in the cases just cited, and holding that the Court of Claims is a constitutional rather than a legislative court. But in this *Miles* v. *Graham* was taken too broadly. The opinion therein contains no mention of the cases supposed to have been disapproved; nor does it show that this Court's attention was drawn to the question whether that court is a statutory court or a constitutional court. In fact, as appears from the briefs, that question was not mooted. Such as were mooted were considered and determined in the opinion. Certainly the decision is not to be taken in this case as disturbing the earlier rulings or attributing to the Court of Claims a changed status. *Webster* v. *Fall,* 266 U. S. 507, 511.

That court was said to be a constitutional court in *United States* v. *Union Pacific R. R. Co.,* 98 U. S. 569, 602–603; but this statement was purely an *obiter dictum,* because the question whether the Court of Claims is a constitutional court or a legislative court was in no way involved. And any weight the dictum, as such, might have is more than overcome by what has been said on the question in other cases where there was need for considering it.

Without doubt that court is a court of the United States within the meaning of § 375 of Title 28, U. S. C.,[15] just as the superior courts of the District of Columbia are;[16] but this does not make it a constitutional court.

[15] 21 Op. A. G. 449.

[16] *James* v. *United States,* 202 U. S. 401, 407–408.

The authority to create legislative courts finds illustration also in the late Court of Private Land Claims. It was created in virtue of the power of Congress over the fulfillment of treaty stipulations; and its special function was that of hearing and finally determining claims founded on Spanish or Mexican grants, concessions, etc., and embracing lands within the territory ceded by Mexico to the United States and subsequently included within the Territories of New Mexico, Arizona and Utah and the States of Nevada, Colorado and Wyoming.[17] By the treaties of cession the United States was obligated to inquire into private claims to lands within the ceded territory and to respect inviolably those that were valid. Congress at first entrusted the preliminary inquiry to executive officers and required that they make reports whereon it could make the ultimate determinations. This was an admissible mode of dealing with the subject and many claims were finally determined under it.[18] But later on Congress created the Court of Private Land Claims and charged it with the duty of examining and adjudicating, as between claimants and the United States, all claims not already determined. In *Coe* v. *United States,* 155 U. S. 76, that court was held to be a legislative court and the validity of the act creating it was sustained. And while that case related to lands in a Territory there can be no real doubt that the same rule would apply were the lands in a State. The obligation of the United States would be the same in either case and Congress would have the same discretion respecting the mode of fulfilling it.[19] In fact the act creating the court included within its jurisdiction all claims within three States as well as those within three Territories, and the court adjudicated

---

[17]Act March 3, 1891, c. 539, 26 Stat. 854.

[18] *Tameling* v. *U. S. Freehold Co.,* 93 U. S. 644, 662–663; *Astiazaran* v. *Santa Rita Land and Mining Co.,* 148 U. S. 80, 81–82.

[19] *Grisar* v. *McDowell,* 6 Wall. 363, 379.

all within these limits that were brought before it within the periods fixed by Congress.

The Choctaw and Chickasaw Citizenship Court was another legislative court. It was created to hear and determine controverted claims to membership in two Indian tribes. The tribes were under the guardianship of the United States, which in virtue of that relation was proceeding to distribute the lands and funds of the tribes among their members. How the membership should be determined rested in the discretion of Congress. It could commit the task to officers of the department in charge of Indian Affairs, to a commission or to a judicial tribunal. As the controversies were difficult of solution and large properties were to be distributed, Congress chose to create a special court and to authorize it to determine the controversies. In *Wallace* v. *Adams,* 204 U. S. 415, this was held to be a valid exertion of authority belonging to Congress by reason of its control over the Indian tribes. And it is of significance here that in so ruling this Court approvingly cited and gave effect to the opinion of Chief Justice Taney in *Gordon* v. *United States* respecting the status of the Court of Claims.

Before we turn to the status of the Court of Customs Appeals it will be helpful to refer briefly to the Customs Court. Formerly it was the Board of General Appraisers. Congress assumed to make the board a court by changing its name. There was no change in powers, duties or personnel.[20] The board was an executive agency charged with the duty of reviewing acts of appraisers and collectors in appraising and classifying imports and in liquidating and collecting customs duties.[21] But its functions,

[20]Act May 28, 1926, c. 411, 44 Stat. 669.

[21] Acts June 10, 1890, c. 407, §§ 12–18, Stat. 131, 136; August 5, 1909, c. 6, reenacted §§ 12–17, 36 Stat. 11, 98; September 21, 1922, c. 356, § 518, 42 Stat. 858, 972; Title 19, §§ 381, 383, 398–402, 404–406, U. S. C.

although mostly quasijudicial, were all susceptible of performance by executive officers and had been performed by such officers in earlier times.

The Court of Customs Appeals was created by Congress in virtue of its power to lay and collect duties on imports and to adopt any appropriate means of carrying that power into execution.[22] The full province of the court under the act creating it is that of determining matters arising between the Government and others in the executive administration and application of the customs laws. These matters are brought before it by appeals from decisions of the Customs Court, formerly called the Board of General Appraisers.[23] The appeals include nothing which inherently or necessarily requires judicial determination, but only matters the determination of which may be, and at times has been, committed exclusively to executive officers. True, the provisions of the customs laws requiring duties to be paid and turned into the Treasury promptly, without awaiting disposal of protests against rulings of appraisers and collectors, operate in many instances to convert the protests into applications to refund part or all of the money paid;[24] but this does not make the matters involved in the protests any the less susceptible of determination by executive officers.[25] In fact their final determination has been at times confided to the Secretary of the Treasury, with no recourse to judicial proceedings.[26]

This summary of the court's province as a special tribunal, of the matters subjected to its revisory authority,

[22] Constitution, Article I, § 8, cls. 1 and 18; *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 281.

[23] Act August 5, 1909, c. 6, § 29, 36 Stat. 11, 105; Title 28, §§ 301–311, U. S. C.

[24] Title 19, §§ 386, 396–399, 407, 408, U. S. C.

[25] *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 280–281; *Auffmordt* v. *Hedden*, 137 U. S. 310, 329; *Fong Yue Ting* v. *United States*, 149 U. S. 698, 714–715.

[26] *Cary* v. *Curtis*, 3 How. 236, 242, 245–246.

and of its relation to the executive administration of the customs laws, shows very plainly that it is a legislative and not a constitutional court.

Some features of the act creating it are referred to in the opinion below as requiring a different conclusion; but when rightly understood they cannot be so regarded.

A feature much stressed is the absence of any provision respecting the tenure of the judges. From this it is argued that Congress intended the court to be a constitutional one, the judges of which would hold their offices during good behavior. And in support of the argument it is said that in creating courts Congress has made it a practice to distinguish between those intended to be constitutional and those intended to be legislative by making no provision respecting the tenure of judges of the former and expressly fixing the tenure of judges of the latter. But the argument is fallacious. It mistakenly assumes that whether a court is of one class or the other depends on the intention of Congress, whereas the true test lies in the power under which the court was created and in the jurisdiction conferred. Nor has there been any settled practice on the part of Congress which gives special significance to the absence or presence of a provision respecting the tenure of judges. This may be illustrated by two citations. The same Congress that created the Court of Customs Appeals made provision for five additional circuit judges and declared that they should hold their offices during good behavior; [27] and yet the status of the judges was the same as it would have been had that declaration been omitted. In creating courts for some of the Territories Congress failed to include a provision fixing the tenure of the judges; [28] but

[27] Act June 18, 1910, c. 309, 36 Stat. 534, 540.

[28] Acts May 7, 1800, c. 41, § 3, 2 Stat. 58; January 11, 1805, c. 5, § 3, 2 Stat. 309; February 3, 1809, c. 13, § 3, 2 Stat. 514,

the courts became legislative courts just as if such a provision had been included.

Another feature much stressed is a provision purporting to authorize temporary assignments of circuit and district judges to the Court of Customs Appeals when vacancies occur in its membership or when any of its members are disqualified or otherwise unable to act. This it is said shows that Congress intended the court to be a constitutional one, for otherwise such assignments would be inadmissible under the Constitution. But if there be constitutional obstacles to assigning judges of constitutional courts to legislative courts, the provision cited is for that reason invalid and cannot be saved on the theory that Congress intended the court to be in one class when under the Constitution it belongs in another. Besides, the inference sought to be drawn from that provision is effectually refuted by two later enactments—one permitting judges of that court to be assigned from time to time to the superior courts of the District of Columbia,[29] which are legislative courts, and the other transferring to that court the advisory jurisdiction in respect of appeals from the Patent Office which formerly was vested in the Court of Appeals of the District of Columbia.[30]

Another feature to which attention was given is the denomination of the court as a United States court. That the court is a court of the United States is plain; but this is quite consistent with its being a legislative court.

As it is plain that the Court of Customs Appeals is a legislative and not a constitutional court, there is no need for now inquiring whether the proceeding under § 316 of the Tariff Act of 1922, now pending before it, is a case or controversy within the meaning of section 2 of Article

[29] Act September 14, 1922, c. 306, § 5, 42 Stat. 836, 839; Title 28, § 22, U. S. C.

[30] Act March 2, 1929.

III of the Constitution, for this section applies only to constitutional courts. Even if the proceeding is not such a case or controversy, the Court of Customs Appeals, being a legislative court, may be invested with jurisdiction of it, as is done by § 316.

Of course, a writ of prohibition does not lie to a court which is proceeding within the limits of its jurisdiction, as the Court of Customs Appeals appears to be doing in this instance. *Prohibition denied.*