CHARLES S. HATFIELD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89343.   Promulgated August 3, 1938.

*Everett Sanders, Esq.*, and *L. A. Gravelle, Esq.*, for the petitioner.
*Charles E. Lowery, Esq.*, for the respondent.

### OPINION.

OPPER: This proceeding involves deficiencies in income tax of $475.30 for the year 1934 and $605.45 for the year 1935. The only issue is the taxability of the petitioner's salary as a judge of the United States Court of Customs and Patent Appeals.

The following are the facts as stipulated by the parties:

1. That on the 4th day of March, 1923, petitioner, Charles S. Hatfield was appointed an Associate Judge of the United States Court of Customs Appeals now United States Court of Customs and Patent Appeals, by President Harding with the advice and consent of the Senate. That after said appointment, to wit on March 8, 1923, petitioner took his oath of office and qualified as such Judge. That on said day he entered upon the duties of said office as such Judge and has served continuously since.

2. The income tax returns for the period here involved were filed by petitioner with the Collector of Internal Revenue at Toledo, Ohio for the tenth District of Ohio.

We are not now required to determine whether the United States Court of Customs and Patent Appeals is a "constitutional" court, thereby conferring upon petitioner constitutional immunity from tax on his salary. Petitioner's counsel states: "Petitioner for the purpose of this proceeding concedes that the United States Court of Customs and Patent Appeals is not an 'inferior court' as that term is used in Section 1 of Article 3 of the Constitution." See *Ex parte Bakelite Corporation* (1929), 279 U. S. 438, 459; *Williams* v. *United States* (1933), 289 U. S. 553, 571. While therefore not relying upon the provision of the Constitution that compensation of judges shall not be diminished during their term of office,[1] petitioner nevertheless

---

[1] See *Evans* v. *Gore*, 253 U. S. 245.

contends that by construction of the Revenue Act of 1934 [2] his salary is not subject to inclusion in gross income.

It will at once be apparent that the definition of gross income contained in the first sentence of this provision would be broad enough to include petitioner's salary. It is his contention however that the succeeding sentence, by application of the rule of *expressio unius est exclusio alterius*, excludes from the otherwise general definition salaries of all judges of courts of the United States whether "constitutional" or "legislative" whose appointments became effective before June 6, 1932.

It may be assumed for present purposes at least that the Court of Customs and Patent Appeals of which petitioner is one of the judges is a court of the United States. *Ex parte Bakelite Corporation, supra.* But we think it does not follow from this proposition that the indicated language of the revenue act has the effect of exempting petitioner's salary from taxation. As we have said, the general definition of gross income would clearly be broad enough to include the salaries of judges of the courts of the United States, at least as to those not protected by any constitutional immunity. The sentence upon which petitioner relies is not in terms a provision of exemption or exclusion, but of extension or inclusion. It applies only to judges "taking office after June 6, 1932" and therefore has by definition no direct application to petitioner, whose appointment became effective March 8, 1923. Since, without this provision, petitioner's salary would clearly be subject to tax, that sentence on its face, being inapplicable to petitioner, leaves his salary where it would otherwise be, within the scope of gross income. And petitioner himself contends: "Section 22 of the act in controversy is clear and unambiguous and requires no construction. * * * Where the language of a statute is not ambiguous it must be construed in its natural and obvious sense. * * *"

In spite of this, petitioner urges, and there therefore remains for consideration, the application of an extrinsic rule of construction, that of *expressio unius*. To resolve the question thus presented an examination of the true meaning and extent of that rule is required. "The general rule that the expression of one thing is the exclusion

---

[2] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly.

of others is subject to exceptions. Like other canons of statutory construction, it is only an aid in the ascertainment of the meaning of the law, and must yield whenever a contrary intention on the part of the lawmaker is apparent. Where a statute contains a grant of power enumerating certain things which may be done and also a general grant of power which, standing alone, would include these things and more, the general grant may be given full effect if the context shows that the enumeration was not intended to be exclusive." *Springer* v. *Philippine Islands*, 277 U. S. 189, 206. "This maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment." *Ford* v. *United States*, 273 U. S. 593, 611. In *City of Lexington* v. *Commercial Bank*, 130 Mo. App. 687; 108 S. W. 1095, 1096, a case cited by the Supreme Court in the *Springer* case, *supra*, the opinion contains the following language: "It has been said, if there is some special reason for mentioning one and none for mentioning the other, the absence of any mention of the latter will not operate as an exclusion * * *." See also *State ex rel. Whitlock* v. *State Board of Equalization* (Mont.), 45 Pac. (2d) 684, 687; *Parks* v. *Commissioners of Soldiers' and Sailors' Home*, 22 Colo. 86; 43 Pac. 542, 545.

Applying these principles to the language before us, we think that both the purpose of the section and the legislative and judicial history of the subject lead to the conclusion that the rule is inapplicable. Congress had already expressed the view that the general language of the first sentence of section 22 (a) was sufficiently broad to include all such salaries taxable under the Constitution.[3] And it is generally recognized that in the definition of gross income Congress endeavored "to use its power to the full extent." *Douglas* v. *Willcuts*, 296 U. S. 1, 9. We must thus look elsewhere to discover the purpose of adding the second sentence of section 22 (a). We find this in the Committee Reports covering the Revenue Act of 1932, where it is expressed as follows: "This amendment requires Presi-

---

[3] "SECTION 22—Gross Income.

"No changes are made in the general definition of gross income in section 22 (a) except to omit as surplusage the following clause which appears in section 213 (a) of the 1926 Act:

'(including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such)'

"In so far as such compensation may be taxed under the Constitution, it is already included within the general definition in the bill." [Report of Ways and Means Committee, 70th Cong., 1st sess.; House Report No. 2, p. 13 (128).]

dents of the United States and judges of the courts of the United States, taking office after the date of the enactment of this act, to include their compensation in gross income, and *amends all acts fixing the compensation of such officers so as to make it clear that the provision is intended as a reduction of such compensation;* and the House recedes." (Emphasis added.) Conference Report, Statement of the Managers on the Part of the House, 72d Cong., 1st sess.; House Report No. 1492, p. 11. In so far as judges of "legislative courts" are concerned, this provision was unnecessary. The same Congress which passed the Revenue Act of 1932 was aware of its power [4] to diminish the compensation of such judges during their term of office.[5] And this power was subsequently confirmed by the Supreme Court. *Williams* v. *United States* (1933), *supra*. Cf. *O'Donoghue* v. *United States* (1933), 289 U. S. 516. The legislation was necessary, however, particularly as to that aspect which specifically treats the tax as a reduction in compensation, if "constitutional" judges appointed subsequent to the enactment of the Act were to be subjected to taxation. *Miles* v. *Graham* (1925), 268 U. S. 501. If this were the purpose of the section its exclusion of judges appointed prior to June 6, 1932, would be limited to judges of the constitutional courts, the taxation of whose salaries was in any event beyond the power of Congress, according to the doctrine of *Evans* v. *Gore* and *Miles* v. *Graham*. And the express Congressional belief that the broad opening language was sufficient to reach all judicial salaries subject to tax furnishes that "special reason for mentioning one" and for not "mentioning the other" referred to in the *Lexington* case, *supra*. This situation provides ample basis for the inclusive language of the second sentence of section 22 (a) and makes it unnecessary to assume that the legislative purpose in including the salaries of judges taking office after June 6, 1932, was inferentially to exclude the salaries of judges of "legislative" courts already in office.

Petitioner suggests that the failure of Congress to adopt more restrictive language should be taken as an indication of its purpose to include only "legislative" and "constitutional" judges taking office subsequent to the specified date. He suggests that the use of some such language as "in the case of Presidents of the United States and judges of inferior courts of the United States taking office after the

---

[4] See *United States* v. *Fisher* (1883), 109 U. S. 143.

[5] SECTION 107. (a) During the fiscal year ending June 30, 1933—

* * * * * * *

(5) the salaries and retired pay of all judges (except judges whose compensation may not, under the Constitution, be diminished during their continuance in office), if such salaries or retired pay are at a rate exceeding $10,000 per annum, shall be at the rate of $10,000 per annum." [Legislative Appropriation Act of June 30, 1932 (47 Stat. 382, 402).]

date of enactment of this Act" would have placed the matter beyond question. In this we think he overlooks the fact that the sentence we are discussing is a taxing provision and not one of exemption. It was therefore reasonable and appropriate for Congress to indicate the breadth of its purpose by using language as general and unrestricted as possible. For example, had the words suggested by petitioner been used, application of the very rule for which he contends would have made it possible to argue that, since Congress specified as taxable only the salaries of "constitutional" judges, the salaries of "legislative" judges would consequently have been exempt, not only as to those taking office prior to 1932 but as to the entire class.

Nor are we able to agree with petitioner that "It is inconceivable that the Congress should legislate in such a way as to operate against the Judges of the Court of Customs Appeals and the Court of Claims on the one hand and in favor of the Judges of the District Courts and Circuit Courts of Appeal on the other in excluding from the income tax levy the salaries of Judges already appointed." A comparable "discrimination" is precisely what was accomplished by the appropriation act [6] passed by the same Congress which first enacted the sentence we are here considering. *O'Donoghue* v. *United States, supra; Williams* v. *United States, supra.*

We are therefore unable to conclude that anything in the language or circumstances surrounding the enactment of section 22 (a) of the Revenue Act of 1934 has the effect of exempting from inclusion in gross income the salary of a judge of the Court of Customs and Patent Appeals, whether appointed prior or subsequent to June 6, 1932.

Reviewed by the Board.

*Decision will be entered for the respondent.*