## BROWN et ux. v. MAGRUDER.
### Nos. 6411, 6412.

District Court, D. Maryland.
Oct. 29, 1938.

Thomas F. Cadwalader and Marbury, Gosnell & Williams, all of Baltimore, Md., for plaintiffs.

James W. Morris, Sp. Asst. to Atty. Gen., Sewall Key, Andrew D. Sharpt, and Berryman Green, Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, for defendant.

COLEMAN, District Judge.

This is a tax case, the precise question presented for determination being whether the salary of one of the plaintiffs, George Stewart Brown—a judge of the United States Customs Court, who filed joint income tax returns for his wife, the other plaintiff, and for himself, and who, for convenience, is hereinafter referred to as "the plaintiff"—is taxable for the calendar years 1934 and 1935 under the Revenue Act of 1934, Section 22(a), Chap. 277, 48 Stat. 680, 686, 26 U.S.C.A. § 22(a), by reason of the following language therein contained: "In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly."

This provision was first contained in the Revenue Act of 1932, 47 Stat. 178, 26 U.S.C.A. § 22(a), with precisely the same

language, except the words, "after the date of the enactment of this Act," appeared in the place of "June 6, 1932," in the later Act.

The present plaintiff was appointed to office on November 19, 1913. Therefore, the question is a relatively narrow one: Was he, during 1934 and 1935, a judge of one of the "courts of the United States" within the meaning of this phrase as used in the statute? If he was, his salary as such judge is not taxable, since the Act expressly provides that it shall apply only to "judges of courts of the United States taking office after June 6, 1932."

It is unnecessary to review in detail the character or status of the Customs Court. It has been described by the Supreme Court in dictum in the case of Ex Parte Bakelite Corporation, 279 U.S. 438, at page 457, 49 S.Ct. 411, at page 416, 73 L.Ed. 789, as follows: "Formerly it [the Customs Court] was the Board of General Appraisers. Congress assumed to make the board a court by changing its name. There was no change in powers, duties, or personnel. The board was an executive agency charged with the duty of reviewing acts of appraisers and collectors in appraising and classifying imports and in liquidating and collecting customs duties. But its functions, although mostly quasi judicial, were all susceptible of performance by executive officers, and had been performed by such officers in earlier times." This part of the opinion is accompanied by foot note references to the chronological statutory history of the Customs Court which need not be repeated here.

In this case it was held that a writ of prohibition did not lie to the Court of Customs Appeals (a court distinct from the Customs Court with which we are here concerned) prohibiting it from entertaining an appeal from findings of the Tariff Commission, since the Court of Customs Appeals was found to have been acting within the limits of its statutory jurisdiction, although it was declared to be a "legislative" and not a "constitutional" court within the meaning of Article 3, Sec. 1 of the Federal Constitution, U.S.C.A.Const, art. 3, § 1. It was also held, and this is of particular significance in the present controversy, that although, a "legislative" court, the Court of Customs Appeals was nevertheless a "court of the United States," the exact language in the opinion on this point being as follows (page 460, 49 S.Ct. page 417): "That the court is a court of the United States is plain; but this is quite consistent with its being a legislative court."

Following this decision, in 1933 it was held in O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356, that the Supreme Court and the Court of Appeals of the District of Columbia were inferior courts of the United States within the meaning of Article 3, Sec. 1 of the Constitution, U.S.C.A.Const. art. 3, § 1, and that therefore, their judges were entitled, on the authority of Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887, 11 A.L.R. 519, and Miles v. Graham, 268 U.S. 501, 45 S.Ct. 601, 69 L.Ed. 1067, to the constitutional exemption from diminution of their salaries by taxation, which was attempted under the Legislative Appropriation Act of June 30th, 1932, Chap. 314, 47 Stat. 382, 401, commonly known as the Economy Act of 1932. However, in Williams v. United States, 289 U.S. 553, 53 S.Ct. 751, 77 L.Ed. 1372, it was held otherwise with respect to the judges of the Court of Claims, that court being declared a "legislative" and not a "constitutional" court.

There is nothing in these later cases to shake our conviction arising, of necessity, from what was decided in the Bakelite Corporation Case, that the Customs Court is undoubtedly not a "constitutional" court, and yet at the same time is "a court of the United States" as that phrase is employed in that decision. While it is true in the O'Donoghue Case, supra, the Supreme Court rejected certain dictum found in the Bakelite Case to the effect that the Supreme Court and the Court of Appeals of the District of Columbia are merely legislative courts, the status of the Court of Customs Appeals as determined in the Bakelite Case was in no respect changed or affected. Thus, from the analogy expressly drawn in that case between the Court of Customs Appeals and the Customs Court; and also from the fact that, as shown in the Williams Case, supra, no distinction in respect to status as here considered was made, or in fact seriously argued between the Court of Claims and the Court of Customs Appeals, it must necessarily follow that the Customs Court is "a court of the United States" as the Supreme Court has used that phrase, namely, to classify broadly both "constitutional" and "legislative" courts organized under the National Government.

We now return to the precise and more narrow question presented for determination: Is the phrase "courts of the United States" as used in the 1934 statute to be treated as having the same broad meaning as that given to it when used by the Supreme Court in the decisions just analyzed? The Government contends for a narrow interpretation which would limit the words to embracing only "constitutional courts" as the Supreme Court has defined them.

An examination of related antecedent tax legislation shows that the Revenue Acts prior to that of 1919 specifically exempted "the compensation of the present President of the United States during the term for which he has been elected, and the judges of the Supreme and inferior courts of the United States now in office." Sec. 2(b), Revenue Act of 1913, 38 Stat. 166–168; Sec. 4, Revenue Act of 1916, 39 Stat. 758. However, this provision was omitted from the Revenue Act of 1919 and after the phrase "compensation for personal service," contained in the general definition of gross income, there was inserted the following clause: "including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereon, or the District of Columbia, the compensation received as such." Act of February 24, 1919, Chap. 18, 40 Stat. 1057, 1065, § 213(a).

In 1920 the Supreme Court in Evans v. Gore, supra, held invalid the above quoted provision, in so far as it attempted to impose a tax upon the salary of a United States District Judge appointed and taking office prior to the enactment of that statute, on the ground that such a tax was in effect a diminution of the judge's salary in violation of Article 3, Section 1 of the Constitution, U.S.C.A.Const. art. 3, § 1. Four years later, that is, in 1925, in Miles v. Graham, supra, the Supreme Court extended the rule of the Evans Case to judges appointed after the enactment of such a tax provision. The Court, however, in its decision gave no consideration to the question as to whether the Court of Claims was a "legislative" rather than a "constitutional" court but later, in Williams v. United States, supra, the Supreme Court definitely held that the Court of Claims was a "legislative" court, thus reversing the position taken in Miles v.

Graham, supra, in so far as the Court of Claims was concerned.

In spite of the above mentioned decisions, the revenue laws were not amended so as to be in conformity therewith until 1928, when the clause specifically imposing the tax upon the compensation of the President of the United States and the judges was eliminated. The report of the Committee of Ways and Means of the House, considering the Revenue Act of 1928, 45 Stat. 791, contains the following (House Report No. 2, 70th Congress, 1st Sess., page 13): "No changes are made in the general definition of gross income in section 22(a) except to omit as surplusage the following clause which appears in section 213(a) of the 1926 Act: '(including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such).'

"In so far as any such compensation may be taxed under the Constitution, it is already included within the general definition in the bill."

The corresponding report of the Senate Committee on Finance contains a similar statement as follows (Senate Report No. 960, 70th Congress, 1st Sess., page 19): "Section 215 of the Revenue Act of 1926 and corresponding sections of prior acts provide that the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, shall be subject to income tax on their salaries. Section 22(a) of the House Bill omits the provision above referred to, on the ground that in so far as such compensation is legally subject to tax it is included in the more general definition of gross income applicable to all taxpayers. * * *"

Thus, finally Congress conformed the income tax legislation to the rulings of the Supreme Court, and this completes the relevant enactments until we come to the Revenue Act of 1932, the interpretation of which is before us in the present controversy. As we have already pointed out, by the Economy Act of 1932 as interpreted by the Supreme Court in O'Donoghue v.

United States, and Williams v. United States, the salary reductions therein provided became applicable to salaries of the judges of the Customs Court, including that of the present plaintiff. But it is to be noted that there is no provision in that Act, like the one in the law here in question, exempting the salaries of such named recipients as took office before the effective date of the enactment, so the rulings in those cases do not cover the precise point now being considered. The Economy Act, 47 Stat. 401, made special salary reductions for the fiscal year ending June 30, 1933 in "the salaries and retired pay of all judges," if in excess of $10,000 per annum, excepting only those "whose compensation may not, under the Constitution, be diminished during their continuance in office."

Apparently, neither House of Congress, while this legislation was under discussion, threw any light upon precisely what was intended to be covered by the language employed in the Revenue Act of 1932. The only interpretative help is to be found in the following meager statement of the Conference Report Managers on the part of the House (House Report 1492, 72nd Congress, First Session, pages 10 and 11): "This amendment requires Presidents of the United States and judges of the courts of the United States taking office after the date of the enactment of this act to include their compensation in gross income, and amends all acts fixing the compensation of such officers so as to make it clear that the provision is intended as a reduction of such compensation; and the House recedes."

However unfortunate it may be that we are unaided by some expression of the Congress as to its precise intent, this Court must assume that Congress at the time of the enactment was familiar with what the Supreme Court had said in the various cases referred to that have relation to this problem. That is to say, this Court cannot assume that Congress was attempting, in the face of those decisions, to pass a statute applicable exclusively to that class of judges whose salaries had been declared exempt, whether taking office before or after the effective date of the legislation, that is to say, a statute unconstitutional in its entire scope in this respect.

The Board of Tax Appeals, as late as August 3, 1938, in the case of Hatfield v. Commissioner of Internal Revenue, 38 B.T. A. 245, decided, with relation to a Judge of the United States Court of Patent Appeals, that his salary was not exempt from taxation under the same Act we are here construing. The Board said in its opinion (page 246): "As we have said, the general definition of gross income would clearly be broad enough to include the salaries of judges of the courts of the United States, at least as to those not protected by any constitutional immunity. The sentence upon which petitioner relies is not in terms a provision of exemption or exclusion, but of extension or inclusion. It applies only to judges 'taking office after June 6, 1932' and therefore has by definition no direct application to petitioner, whose appointment became effective March 8, 1923. Since, without this provision, petitioner's salary would clearly be subject to tax, that sentence on its face, being inapplicable to petitioner, leaves his salary where it would otherwise be, within the scope of gross income.

"      *      *      *      *      *      *

"Petitioner suggests that the failure of Congress to adopt more restrictive language should be taken as an indication of its purpose to include only 'legislative' and 'constitutional' judges taking office subsequent to the specified date. He suggests that the use of some such language as 'in the case of Presidents of the United States and judges of inferior courts of the United States taking office after the date of enactment of this Act' would have placed the matter beyond question. In this we think he overlooks the fact that the sentence we are discussing is a taxing provision and not one of exemption. It was therefore reasonable and appropriate for Congress to indicate the breadth of its purpose by using language as general and unrestricted as possible. For example, had the words suggested by petitioner been used, application of the very rule for which he contends would have made it possible to argue that, since Congress specified as taxable only the salaries of 'constitutional' judges, the salaries of 'legislative' judges would consequently have been exempt, not only as to those taking office prior to 1932 but as to the entire class."

We believe the above reasoning to be unsound. To say that, since, without the provision here in controversy, "petitioner's salary would clearly be subject to tax, that sentence on its face, being inapplicable to petitioner, leaves his salary where it would otherwise be, within the scope of gross in-

come," is to evade the very question to be decided. The Board has adopted, through a course of reasoning which we are completely unable to follow, a conclusion, the effect of which is to say that Congress enacted a provision which must be interpreted as unconstitutional, because the Board, in limiting the application of the provision to "constitutional" courts only, of necessity sets up an unconstitutional interpretation, in view of the decision in Miles v. Graham, supra. Note what the Supreme Court said in this case (pages 508, 509, 45 S.Ct. page 602): "The words and history of the clause indicate that the purpose was to impose upon Congress the duty definitely to declare what sum shall be received by each judge out of the public funds and the times for payment. When this duty has been complied with, the amount specified becomes the compensation which is protected against diminution during his continuance in office.

"*    *    *    *    *

"No judge is required to pay a definite percentage of his salary, but all are commanded to return, as a part of 'gross income,' 'the compensation received as such' from the United States. From the 'gross income' various deductions and credits are allowed, as for interest paid, contributions or gifts made, personal exemptions varying with family relations, etc., and upon the net result assessment is made. The plain purpose [of the Taxing Act] was to require all judges to return their compensation as an item of 'gross income,' and to tax this as other salaries. This is forbidden by the Constitution.

"The power of Congress definitely to fix the compensation to be received at stated intervals by judges thereafter appointed is clear. It is equally clear, we think, that there is no power to tax a judge of a court of the United States on account of the salary prescribed for him by law."

██ In the light of this case, as well as the later related decisions which we have already fully reviewed, it is our duty to place upon the provision in question an interpretation which will not invalidate it completely, if such is possible and reasonable. Congress may not, at any time during his term of office, diminish the salary of a judge of a "constitutional" court, regardless of the date of enactment of the legislation, but Congress can reduce at any time the salary of a judge of a "legislative" or "statutory" court. If we thus give to the Act an interpretation which shall embrace the judges of both classes of courts, it is not totally void, but permits of the taxation of salaries of judges of the latter type of courts, provided only they took office after the effective date of the Act. It is true, as has just been said, Congress was not required to exclude from taxation the salaries of judges of "legislative" courts already in office. But it is not necessary for this court to speculate further as to the Congressional intent. Congress may have considered it difficult, or unnecessary, for it to attempt to define, by precise language, all courts that might fall in the latter class, and therefore, adopted an all-inclusive term, leaving the separation to be accomplished by judicial interpretation. It is appropriate to point out that it was not until 1937 that the Internal Revenue Department saw fit to tax the incomes of the judges of the Customs Court—that is to say the Department's ruling of 1923 exempting the judges of that court remained in effect until 1937—which suggests that the taxing authorities themselves probably had real doubt of the applicability of the Act of 1932 to a case such as the present. In any event, if we are seeking a reason behind the specific exemption in the legislation, the aforegoing is far more plausible than to say that the clause was inserted merely for the purpose of exempting the salaries of "constitutional" judges taking office after the enactment of the legislation, because, as we have seen, the salaries of such judges, regardless of the time when they may take office, have been declared to be beyond the reach of any such legislation. In this connection we are not unmindful of the fact that the statute makes precisely the same provision with respect to the salaries of "Presidents of the United States," and that the Constitution contains a similar provision against the diminution of their salaries. Article 2, Sec. 1, U.S.C.A.Const. art. 2, § 1. Suffice it to say that the ratio decidendi of Evans v. Gore and Miles v. Graham, supra, would seem to apply with like effect to Presidents of the United States, whatever Congress may have had in mind.

We find nothing inconsistent with the conclusion here reached, in such early cases as McAllister v. United States, 141 U.S. 174, 11 S.Ct. 949, 35 L.Ed. 693, dealing with territorial courts.

██ This Court in construing a statute cannot be controlled by results, whether

they be favorable or unfavorable to either party to the controversy, including, of course, the Government. The tax desires or needs of the Government are to be given no heed by this Court unless it is clear they are being satisfied in legitimate ways.

For these reasons, plaintiffs are entitled to a refund of the taxes paid and, therefore, the Government's motion for judgment on the pleadings must be denied.