January 25, 1978

## 78-4 MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

### Fair Housing—Civil Rights Act—Civil Penalties—Application of Seventh Amendment—Jury Trial

This is in response to your request for our opinion concerning the constitutionality of the civil damages provisions of the Edwards-Drinan bill (H.R. 3504). Specifically, you have inquired whether the bill's administrative complaint procedure offends the Seventh Amendment guarantee that "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." For the reasons that follow, it is our opinion that the provisions in question are suspect under the recent Supreme Court decisions interpreting the Seventh Amendment. The issue is a close one and almost certainly will be litigated. With these considerations in mind, we have suggested several ways in which the language of the provision could be altered to improve its chances of withstanding scrutiny.

1.

H.R. 3504, 95th Cong., 1st sess. (1977), would amend Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*, by creating three alternative mechanisms for enforcement of its fair housing provisions. Section 812 preserves private enforcement by means of civil suit; § 811 provides for "pattern or practice" actions by the Attorney General. Most importantly, for purposes of this discussion, § 810 of the bill authorizes the Secretary of Housing and Urban Development (HUD), either in response to a private complaint or on his or her own initiative, to investigate allegations of discriminatory housing practices. If he finds reasonable cause to believe the charges to be true, he is required either to refer the matter to the Attorney General for the filing of a civil action against the offender, or to file an administrative complaint. If the administrative procedure is followed, the respondent is entitled to notice and to the opportunity for a hearing on the

record; the person conducting the hearing may also allow any aggrieved person to intervene. The hearing officer, after making findings of fact and conclusions of law, may award various forms of relief including money damages, equitable and declaratory relief, and punitive damages up to $10,000; temporary or preliminary relief is also available pending final disposition of the complaint. Review is in the courts of appeal using a "substantial evidence" standard. The bill also authorizes the Secretary to assess a civil penalty of $1,000 for each day during which a violation continues after the date on which the administrative order becomes unreviewable. Section 811(b) empowers the Attorney General, at the request of the Secretary, to institute civil proceedings to enforce either final orders or civil penalties of this sort.

In applying the Seventh Amendment to this statutory scheme, two principles are immediately clear. First, it is firmly established that the Seventh Amendment "does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis* v. *Loether*, 415 U.S. 189, 194 (1974). Thus, the Supreme Court has held that a jury may be demanded in suits in the Federal courts for actual and punitive damages under § 812 of the Civil Rights Act of 1968. *Id.* Similarly, in *Pernell* v. *Southall Realty*, 416 U.S. 363 (1974), the Court held that the Seventh Amendment applied in civil suits in the District of Columbia courts for recovery of possession of real property.

A second principle also has emerged—the Seventh Amendment does not apply where Congress has properly assigned the functions of factfinding and initial adjudication to an administrative tribunal where the use of a jury would be inappropriate. Thus, in *Atlas Roofing Co.* v. *Occupational Safety and Health Review Commission*, 430 U.S. 442 (1977), the Supreme Court upheld Congress' choice of a specialized administrative body to ascertain whether employers were maintaining unsafe working conditions and to impose civil penalties. The Court found no constitutional right to a jury under such circumstances:

> . . . when Congress creates new statutory "public rights," it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be "preserved" in "suits at common law." Congress is not required by the Seventh Amendment to choke the already crowded federal courts with new types of litigation or prevented from committing some new types of litigation to administrative agencies with special competence in the relevant field. This is the case even if the Seventh Amendment would have required a jury where the adjudication of those rights is assigned to a

17

federal court of law instead of an administrative agency, 430 U.S., at 455.[1]

While it is, therefore, clear that juries need not be imported into administrative proceedings designed by Congress to give effect to agency expertise, it is also apparent that Congress may not be altogether free to elect such administrative forums under all circumstances. Thus, in *Atlas Roofing*, the Court was careful to go no further than to approve a jury-free administrative proceeding where "public rights" were involved. 430 U.S. at 458. Unfortunately, this talismanic phrase was not well defined. Instead, the Court spoke somewhat circularly in terms of examples—"*e.g.*, cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact" (*id.*, at 450); "*e.g.*, where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights" (*id.*, at 458).

The sovereign's prerogative to sue and to be sued as it deems appropriate was recognized and discussed at length in *Murray's Lessee* v. *Hoboken Land Co.*, 18 How. 272, 284 (1855): "[T]here are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States as it may deem proper." *See also*, *Ex Parte Bakelite*, 279 U.S. 438, 451 (1929): "Legislative courts also may be created as special tribunals to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible to it. The mode of determining matters of this class is completely within congressional control. Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals." Accordingly, Congress' choice of administrative forums as means for collecting civil penalties to be deposited into the public treasury has repeatedly been upheld. *See*, *e.g.*, *Helvering* v. *Mitchell*, 303 U.S. 391 (1938).

So, too, has the use of administrative bodies which, in the course of enforcing public policy, incidentally provide relief to private citizens. Thus, in *NLRB* v. *Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937), the Court upheld agency action under the National Labor Relations Act in requiring a private employer to reinstate an employee with back pay following an unfair labor practice. Likewise, in *Block* v. *Hirsh*, 256 U.S. 135 (1921), the Court rejected a Seventh Amendment challenge to a statute temporarily suspending the legal remedy of ejectment and establishing an administrative tribunal to determine

---

[1]In reaching this broad conclusion, the Court recharacterized the holding of an earlier case, *Kachen* v. *Landy*, 382 U.S. 323 (1966), which had upheld the power of a bankruptcy court, exercising summary jurisdiction without a jury, to adjudicate the otherwise legal issue of voidable preferences. Rather than treating this holding as compelled by the traditional distinction between courts of law and courts of equity, the Court observed that this specialized court of equity "constituted a forum before which a jury would be out of place and would go far to dismantle the statutory scheme." 430 U.S. at 454, n.11.

fair rents at which tenants would be allowed to hold over despite the expiration of their leases.

Nevertheless, it cannot be concluded, based on these rather limited precedents, that administrative proceedings initiated by a public agency but providing the full panoply of judicial relief to private parties are necessarily permitted under the Seventh Amendment. The proceedings before the NLRB at issue in *Jones & Laughlin* were spurred by private complaint, yet the relief available—reinstatement with back pay or an award of back pay alone—was basically equitable in nature. *Cf., Slack* v. *Havens*, 522 F. (2d) 1091, 1094 (9th Cir. 1975) (Title VII). Moreover, the Government agency authorized to hear and decide private complaints, not private individuals who might receive relief in the administrative forum, was alone empowered to trigger proceedings with respect to unfair employment practices and to seek enforcement of its orders in subsequent court proceedings. *See, Amalgamated Utility Workers* v. *Consolidated Edison Co.*, 309 U.S. 261 (1940). The holding of *Block* v. *Hirsh, supra*, also appears to be narrow. Although the result in that case subsequently has been characterized broadly,[2] the Court's reasoning may be misunderstood unless seen in its context. Mr. Justice Holmes, writing for the Court, spoke specifically in terms of Government regulation of the wartime housing industry. Thus, he emphasized that "[i]f the power of the Commission established by the statute to *regulate* the relation is established, as we think it is . . . this objection |concerning the unavailability of trial by jury| amounts to little. To *regulate* the relation and to decide the facts affecting it are hardly separable." 256 U.S., at 158. [Emphasis added.] In *Block*, therefore, the rent commission played a role comparable to that of the Interstate Commerce Commission or other Federal agencies which control the prices charged by private entrepreneurs and thereby incidentally benefit members of the public by requiring those regulated to comply with certain Government standards. The Commission did not afford all-purpose relief to complaining private parties.

An even more important warning is found in *Crowell* v. *Benson*, 285 U.S. 22 (1932), which, while sustaining the role of an administrative tribunal in finding facts and awarding relief under the Longshoremen's and Harbor Workers' Compensation Act, characterized the case at bar as "one of private right, that is, of the liability of one individual to another under the law as defined," *id.*, at 51. Thus, although the role of the administrative tribunal in *Crowell* was solely adjudicatory rather than prosecutorial, the Court did not dwell on this distinction but focused instead on the nature of the liability created. While the proceedings in *Crowell* were deemed to be adjunct to the admiralty jurisdiction of the Federal courts and therefore to present no Seventh Amendment problem, two conclusions relevant to our consideration here are suggested by this statement: (1) more than a simple "public interest" sufficient to sustain congressional legislation is necessary to come within the phrase "public right"

---

[2]"We may assume that the Seventh Amendment would not be a bar to a congressional effort to entrust landlord-tenant disputes, including those over the right to possession, to an administrative agency." *Pernell* v. *Southall Realty, supra*, 416 U.S., at 383.

as used in *Atlas Roofing*; and (2) the nature of relief afforded by an administrative tribunal may not necessarily be irrelevant for Seventh Amendment purposes merely because a government agency plays a formal role in instituting those administrative proceedings.

The constitutionality of the administrative proceedings envisioned by the Edwards-Drinan bill must be tested against these rather inconclusive standards. Because the proposal and the context in which it arises differ sufficiently from administrative procedures approved under existing case law, at the very least, it leaves some room for doubt. Although HUD, rather than a private plaintiff, would actually be responsible for filing the administrative complaint, and would do so only if it found a charge to be supported by reasonable cause, it would not be the sole enforcer of the statutorily created guarantee of fair housing practices as was true in *NLRB* v. *Jones & Laughlin*. Nor would it act in a regulatory capacity akin to that of the rent commission in *Block* v. *Hirsh*. Moreover, the Department would enter the fray, not at the outset, but nearly 10 years after the creation of a private cause of action in the district court which provides for identical remedies, and nearly 4 years after the Supreme Court expressly ruled that under such circumstances trial by jury must be available on demand. It is therefore unlikely that removing the obvious cross-reference from § 810 to § 812—civil cause of action or the adoption of cosmetic changes in nomenclature—would suffice to obviate the potential constitutional questions inherent in the proposal.

It may well be that the courts, when asked to apply the Seventh Amendment in this context, would adopt a broad rule based on the specialized forum approach taken in *Atlas Roofing*[3] and the sovereign prerogative analysis of *Murray's Lessee*. If so, as long as an administrative agency, and not simply private parties, played a prosecutorial as well as adjudicatory role in administrative proceedings, the Seventh Amendment would not apply. The existence of a related private right of action need not undercut the legitimacy of Congress' choice in this regard; rather, the continued availability of such a judicial forum merely provides alternative means by which private citizens can vindicate the public interest also enforced by the sovereign.

Different reasoning could, however, dictate a different result. It could be argued that Congress should not be able, under the vague rubric "public right," to circumvent the Seventh Amendment completely by creating a chain of administrative courts capable of giving traditional common law remedies to private litigants seeking relief from wrongs (such as dignitary torts) traditionally regarded as private in character. Plainly, the Seventh Amendment question here is a close and difficult one. Were we to opine one way or the other, our conclusion would probably favor a finding that § 810 is unconstitutional.

Rather than conclude on this equivocal note, we have considered whether it might be possible to modify § 810 to improve its chances of withstanding

---

[3]Such a ruling could also rest on the expansive dictum in Mr. Justice White's opinion in that case, emphasizing the breadth of Congress' prerogative to select the manner in which it will go about resolving important "public" issues. 430 U.S. at 455.

constitutional attack. It should be understood, at the outset, that we do not profess to share your Department's expertise on and sensitivity to the policy and administrative considerations that would inevitably come into play here. Our advice should be seen as merely suggestive of ways in which the constitutional hurdles could be reduced.

## II.

First, private actions in a district court seeking actual and punitive damages and other relief might be preserved, but the nature of the proposed administrative proceedings altered. Use of an administrative forum to impose civil penalties without recourse to trial by jury was expressly approved in *Atlas Roofing*. Provision for equitable relief in the form of temporary or permanent injunctions in no way offends the Seventh Amendment's preservation of juries in "Suits at common law." It could be contended that thus to limit the administrative relief available, by omitting any provision for awards of actual or punitive damages, would not seriously undercut the efficacy of the proposal. Actual damages resulting from a dignitary tort are difficult to prove, and the threat of a civil penalty due the government would do as much to encourage compliance with the law as would the possible imposition of punitive damages.[4] This option would seem almost certainly to avoid any possible problem under the Seventh Amendment.

Second, the private action in a district court might be eliminated, and the remedies now available in that forum instead provided in the course of administrative proceedings. The development of legislative history demonstrating a belief by Congress in the necessity for a strong governmental role in order to vindicate the public interest in nondiscriminatory housing practices would provide added support for the claim that the choice of an administrative forum was more than a ruse to eliminate Seventh Amendment rights incident to the existing civil cause of action. This option would be strengthened if the provision for punitive damages were eliminated and civil penalties imposed to run in favor of the government rather than the private complainant.

Third, the bill's treatment of the mechanism by which administrative awards are to be enforced could be modified. Section 811(b) indicates that the Secretary may request the Attorney General to institute civil proceedings for this purpose; it may be inferred that no power to sue for enforcement is meant to lie in the private complainant. Express language disallowing such claims by other than the Attorney General could enhance the claim that a public right, not a private right, is being vindicated. Consideration also might be given to vesting the reviewing circuit court of appeals with the power to enforce such awards (*see, e.g.*, 15 U.S.C. § 45(d) (the review provision applicable to orders of the

---

[4]Moreover, the bill as presently drafted seems to invite money-minded plaintiffs to bring charges in the administrative forum, then to return to the district court if their initial efforts prove unsuccessful. The resulting duplicative effort by administrative and judicial officers, costs to defendants, and problems of *res judicata* would seemingly be at least somewhat reduced if injunctive relief were the only remedy available in both forums.

Federal Trade Commission under § 5 of the Federal Trade Commission Act)), instead of simply incorporating the provision authorizing such courts to enjoin, set aside, suspend, or determine the validity of orders as set forth in 28 U.S.C. § 2342. The awkward asymmetry of a civil suit in which jury trial is guaranteed pursuant to *Curtis*, and an enforcement action also in the district court, which provides absolutely identical relief, would therefore be avoided.[5]

Finally, a requirement that the Secretary determine that administrative proceedings are in the public interest, as is the case in FTC proceedings under 15 U.S.C. § 45, would enhance the emphasis upon the "public right" (as opposed to "private right") aspects of this bill, which are now left to be inferred from the statutory scheme. Although such a change is unlikely to be determinative in a court's interpretation of the measure, it may weigh the balance in favor of sustaining the proposed administrative procedure.

As stated above, we are not in a position to judge the practical merits of any of these options. Nor are we able to assure you that the adoption of any alterations would obviate the possibility of a successful challenge to the administrative procedures contemplated here. We would urge that, whatever course you follow, steps be taken during the legislative process to underline wherever possible the public benefit aspects of this bill.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[5]While such an enforcement action is arguably merely an extension of the administrative proceedings, and would not, therefore, trigger a right to a jury determination of the underlying facts, a contrary rule has, in the past, been adopted by at least one court with regard to suits to enforce the imposition of civil penalties under the Federal Trade Commission Act. *See, United States* v. *J.B. Williams, Co., Inc.,* 498 F. (2d) 414 (2d Cir. 1974). A court faced with the incongruous availability of jury trials in suits by private plaintiffs, but not in actions brought by HUD to provide private complainants with identical relief, might well determine that jury trials should be afforded in both cases. Such a result could significantly limit the efficacy of the administrative tribunal as a means of speeding the disposition of housing discrimination cases.