**Robert K. DORNAN, Contestant,**

v.

**Loretta SANCHEZ, Contestee.**

**No. SA CV 97–176–GLT[CC].**

United States District Court,
C.D. California.

Sept. 23, 1997.

William R. Hart, Hart, King & Coldren, Santa Ana, CA, for Contestant.

Frederic D. Woocher, Strumwasser & Woocher, Santa Monica, Ca, for Contestee.

## ORDER

TAYLOR, District Judge.

The court holds, among other things, the deposition subpoena provisions of the Federal Contested Elections Act, 2 U.S.C. § 381 and following, are constitutional.

## I. *BACKGROUND*

By less than a thousand votes, incumbent Robert Dornan was defeated by challenger Loretta Sanchez in the 1996 general election for the 46th Congressional District seat in the United States House of Representatives. Dornan filed an election contest in the House of Representatives under the Federal Contested Elections Act (referred to as "FCEA" or "the Act") 2 U.S.C. § 381 and following. That contest is currently pending before the House of Representatives Committee on House Oversight.

Under the discovery authority of FCEA, Dornan requested this court to issue numerous subpoenas for depositions and extensive production of documents. This court previously held a court's only authorized participation in the FCEA is to issue requested deposition subpoenas apparently regular on their face. *Dornan v. Sanchez*, 955 F.Supp. 1210, 1211 (C.D.Cal.1997) (construing 2 U.S.C. § 388(a) and other provisions of the Act). Dornan served a large number of issued subpoenas, and numerous discovery disputes followed.

In the present dispute, an immigrants assistance organization, Hermandad Mexicana Nacional (Hermandad) sought a stay from this court of a deposition and documents production under a Dornan subpoena to the Orange County district attorney seeking Hermandad records the D.A. had previously seized. Among other things, Hermandad challenged the constitutionality of the FCEA's subpoena provisions. Ruling that unconstitutionality of the enabling statute would render the court's subpoenas "irregular on their face," the court temporarily stayed the D.A.'s deposition until the constitutionality issue could be ruled on.

In briefing, Hermandad also contends the notice to it of the district attorney's deposition was untimely. Sanchez joins in the unconstitutionality argument, and also asserts Dornan's counsel should be disqualified for alleged subpoena use misconduct.

Pending the hearing, Dornan withdrew the subpoena to the district attorney, and contended the matter had now become moot. By minute order, the court ruled it appeared the matter was not moot, and ordered the matter to go forward. The matter has now been fully briefed and heard, and is ready for decision.[1]

---

**1.** In addition to briefs from the parties and Hermandad Mexicana Nacional, the court has received and considered an amicus brief from the Office of the General Counsel of the U.S. House of Representatives, representing the institutional interests of the House in litigation matters. The

## II. DISCUSSION

Each House of Congress is the exclusive judge of the elections and returns of its own members. United States Constitution, Article I, Section 5. The Federal Contested Elections Act establishes the procedure for an election contest in the House of Representatives. 2 U.S.C. §§ 381–396.

The court holds the discovery subpoena provisions of the FCEA are constitutional. No ruling is made on the motion to disqualify counsel, and questions of timely deposition notice must be decided by the House of Representatives.

### A. CONSTITUTIONALITY OF THE ACT'S DISCOVERY SUBPOENA PROVISION

The Federal Contested Elections Act provides for discovery depositions in preparation for the election contest, and issuance of deposition subpoenas by a judge or clerk of a federal district, state, or county court upon application by any party to the election contest. *Id.* §§ 386–388.

Sanchez and Hermandad Mexicana Nacional challenge the constitutionality of the discovery subpoena provisions in the Federal Contested Elections Act, 2 U.S.C. § 381 and following, on several different grounds.

In order to succeed in a claim that the FCEA is unconstitutional on its face, the challengers "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). The fact the statute's procedures may be "insufficient in some particular circumstances" is not enough. *Id.* at 751, 107 S.Ct. at 2103. Statutes will be construed to avoid serious constitutional questions. *See New York v. Ferber,* 458 U.S. 747, 769 n. 24, 102 S.Ct. 3348, 3361 n. 24, 73 L.Ed.2d 1113 (1982). The court is obligated, whenever possible, to interpret a statute in a manner which renders it constitutionally valid. *Communications Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657,

101 L.Ed.2d 634 (1988). The court must begin with the presumption that the challenged statute is valid; its wisdom is not the concern of the court, and if a challenged action does not violate the Constitution it must be upheld. *INS v. Chadha,* 462 U.S. 919, 944, 103 S.Ct. 2764, 2780–81, 77 L.Ed.2d 317 (1983).

### 1. Mootness

■ Dornan has withdrawn the subpoena to the district attorney. He argues this makes the constitutional issue moot. It is "an established and salutary principle of the law of federal courts that constitutional issues affecting legislation will not be determined 'in advance of the necessity of deciding them' or 'in broader terms than are required by the precise facts to which the ruling is to be applied.'" *Hastings v. Judicial Conference of the United States,* 770 F.2d 1093, 1101 (D.C.Cir.1985) (*quoting Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 569, 67 S.Ct. 1409, 1420, 91 L.Ed. 1666 (1947)). "[E]ven when jurisdiction exists it should not be exercised unless the case 'tenders the underlying constitutional issues in clean-cut and concrete form.'" *Socialist Labor Party v. Gilligan,* 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972) (*quoting Rescue Army,* 331 U.S. at 584, 67 S.Ct. at 1427).

But, it is also well-settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). "Only if there is no reasonable expectation the action will recur is such a case deemed moot." *Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1510 (9th Cir.1994) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953)).

The question of the Act's discovery subpoena provision's constitutionality is important and is squarely presented by the parties

court has quoted liberally from the House's brief concerning the historical record of the Federal

Contested Elections Act.

for decision. Although the subpoena to the district attorney has been withdrawn, Dornan could seek to revive it. Additionally, the parties acknowledge several other subpoenas remain outstanding, and the House's Committee has ruled they remain valid and enforceable. The court's subpoenas would be void if the portion of the Act which authorizes them is unconstitutional. Therefore, the court finds the issue is not moot, and should be decided.

### 2. *The Historical Record*

The early history and prior interpretation of federal contested election laws can provide important guidance for constitutional interpretation of the present Act. The Supreme Court recently reemphasized in *Printz v. United States,* — U.S. —, —, 117 S.Ct. 2365, 2370, 138 L.Ed.2d 914 (1997),

> [E]arly congressional enactments "provid[e] 'contemporaneous and weighty evidence' of the Constitution's meaning." *Bowsher v. Synar,* 478 U.S. 714, 723–724, [106 S.Ct. 3181, 3186, 92 L.Ed.2d 583] (1986) (*quoting Marsh v. Chambers,* 463 U.S. 783, 790, [103 S.Ct. 3330, 3335, 77 L.Ed.2d 1019] (1983)). Indeed, such "contemporaneous legislative exposition of the Constitution . . ., acquiesced in for a long term of years, fixes the construction to be given its provisions." *Myers v. United States,* 272 U.S. 52, 175, [47 S.Ct. 21, 45, 71 L.Ed. 160] (1926) (citing numerous cases).

In addressing a challenge to another statute originally enacted by the Fifth Congress, the Court noted "[t]he Act is almost as old as the Constitution, and it would savor of doctrinaire audacity now to find the statute offensive to some emanation of the Bill of Rights." *Ludecke v. Watkins,* 335 U.S. 160, 171, 68 S.Ct. 1429, 1434, 92 L.Ed. 1881 (1948) (opinion of Frankfurter, J.).

Federal election contests may be initiated by the House of Representatives itself, based either on a protest filed by a person outside the House or on a motion made by a member. *See* S.Rep. No. 91–546 (1969), *reprinted in* 1969 United States Code of Congressional and Administrative News 1456, 1457. Historically, however, the vast majority of election contests have been initiated by private parties (usually another candidate), rather than the House itself. *See Relating to Election of a Representative from the Eight District of Indiana,* H.R.Rep. No. 99–58, at 3 (1985) ("It is no doubt unusual for the House to initiate its own investigation into the results of an election."). The House has generally recognized such contests resemble in some respects public inquiries and in other respects private litigation, although obviously with a significant public interest. *See e.q.,* 2 Asher C. Hinds, Hinds' Precedents of the House of Representatives § 988 (1907).

In 1798, Congress first enacted a statute permitting parties to election contests to obtain subpoenas for evidence discovery. An Act of January 23, 1798, enacted by the Fifth Congress, provided

> where any person . . . shall intend to contest an election for any member or members of the House of Representatives of the United States, or to support any such election so intended to be contested, and shall be desirous of obtaining testimony respecting such election, it shall be lawful for such person to *make application to any judge of the Courts of the United States,* or to any chancellor, justice, or judge, of a superior or county court, or court of common pleas, of any State, or to any mayor, recorder, or intendant, of a town or city, who shall thereupon issue his warrant or summons, directed to all such witnesses as shall be named to him by such applicant . . . and requiring the attendance of such witnesses before him . . . in order to be then and there examined [regarding] the subject matter of the aforesaid application.

9 Annals of Congress 3704–05 (1799) (emphasis added).

Although this statute expired by its own terms at the end of the first session of the Sixth Congress, the House on a number of occasions has authorized the taking of testimony by private parties in the absence of any statutory authority. For example, in 1791 the House by resolution provided the parties to the Georgia election contest of *Jackson v. Wayne* could take testimony before certain courts or magistrates. 1 Hinds, *supra* p. 6, § 708. Similarly, in 1850, the

House by resolution authorized the taking of testimony by deposition according to state law in election contests in Iowa and Pennsylvania. *Id.* §§ 718, 815.

In 1851, Congress enacted a new statute governing contested elections, permitting any "contestant or returned member" to apply for a subpoena to any judge of any court of the United States or to certain other officers. *See* Act of Feb. 19, 1851, § 3, 9 Stat. 568 (Brightly's 1857); 1 Hinds, *supra,* § 698. The statute stated "[t]he officer to whom the application ... is made shall thereupon issue his writ of subpoena, directed to all such witnesses as shall be named to him, requiring their appearance before him, at some time and place named in the subpoena, in order to be examined respecting the contested election." Act of Feb. 19, 1851, § 3; 1 Hinds, *supra,* § 698. The statute also provided "said magistrate shall have power to require the production of papers." Act of Feb. 19, 1851, § 8; 1 Hinds, *supra,* § 703. This statute, with a few amendments, remained in effect until 1969, when it was repealed and replaced by the present FCEA.

The 1851 statute contained no mechanism for challenging an election contest notice at an early stage. *See* S.Rep. No. 91–546 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1456, 1458. The contestant was automatically authorized to start taking testimony upon receipt of the answer of the returned member (which answer was required within 30 days of service of the notice of contest). Act of Feb. 19, 1851, § 2. Many election contests under the 1851 statute involved taking testimony at least by the contestant. *See generally* 1 Hinds, *supra* p. 6, §§ 598, 686, 712–733, 824, 831, 834, 843; 2 Hinds, *supra,* §§ 852, 855, 857, 860, 864, 869, 875, 880, 898, 900, 936, 940, 956, 977, 981, 988, 1003, 1064, 1070, 1086; 2 Lewis Dreschler, Dreschler's Precedents of the U.S. House of Representatives §§ 30, 46–62 (1977). In a number of election contests, the parties used subpoenas to obtain testimony or other evidence. *See, e.q,* 1 Hinds,

*supra,* §§ 598, 712; 2 Hinds, *supra,* § 852, 956, 1003, 1070; 2 Dreschler, *supra,* §§ 30, 46.2, 48.1, 55.3; *see also Contested–Election Case of George D. Stevens against William W. Blackney from the Sixth Congressional District of Michigan,* H.R.Rep. No. 1735 (1950).

Congress became concerned in the 1960s that "[t]he 1851 law prescribes antiquated and cumbersome procedures which are unsuitable for the changed conditions of our time." 115 Cong. Rec. 30510 (daily ed. Oct. 20, 1969) (remarks of Congressman Abbitt). In 1969, Congress enacted the FCEA to replace the 1851 statute. Pub.L. No. 91–138, 83 Stat. 284 (1969) (codified as amended at 2 U.S.C. § 381 et seq. (1997)). The FCEA was intended to modernize election contest procedures, including the methods of taking testimony and other evidence. H.R.Rep. No. 91–569, at 4–5 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1456 [hereinafter House Report].

Like the 1851 statute, the FCEA authorizes election contest parties to obtain subpoenas for testimony and production of documents. *See* 2 U.S.C. §§ 386–88. Such subpoenas may be issued by any judge or clerk of a federal district court, state court or county court for the jurisdiction in which the place of examination is located. *Id.* § 388. Unlike the 1851 statute, the FCEA authorizes the Committee on House Oversight upon timely motion to "(1) quash or modify the subpoena if it is unreasonable or oppressive, or (2) condition denial of the motion upon the advancement by the party in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things." *Id.* § 388(e).

The FCEA also replaced the penalty provisions of the old contested elections law with criminal penalties identical to those provided for noncooperating witnesses before Congress.[2] House Report, *supra* p. 8, at 4–5.

---

2. One weakness in the 1851 statute had been the lack of an effective mechanism to punish a witness who refused to obey a subpoena in a contested election case. *See* Dreschler, *supra* p. 8, § 30.2 (finding "[a]lthough the election contest statute authorized the use of subpoenas, there

were instances of refusals to testify as well as ignoring of subpoenas by witnesses; for this reason, a House elections committee recommended that the laws be amended and some practical procedure be adopted by which witnesses could be required to obey process and give testimo-

*Compare* 2 U.S.C. § 390 (penalty under FCEA for failure of witness to appear, testify or produce documents), *with* 2 U.S.C. § 192 (penalty for refusal of a witness to testify or produce papers in a matter before either House of Congress).

The legislative history of the FCEA apparently does not contain any expression of concern about the constitutionality of permitting private parties to obtain subpoenas in election contests or of requiring courts to issue the subpoenas.[3] Although this practice has occurred for 199 years under the authority of the 1798 statute, the 1851 statute, the FCEA and various House resolutions, and the courts have taken up contested elections various times, it does not appear to have been questioned on constitutional grounds. This unbroken history supports the constitutionality of the FCEA's discovery provisions.

### 3. *The Delegation Doctrine*

■ Hermandad argues the Act's delegation of subpoena power to a private individual (here, Contestant Dornan) is an unconstitutional delegation of legislative power. Relying on cases which establish guidelines

for delegation of legislative power, Hermandad claims the FCEA is unconstitutional because it does not establish a sufficient "intelligible principle to which the person or body authorized to [act] is directed to conform." *Loving v. United States,* 517 U.S. 748, ——, 116 S.Ct. 1737, 1750, 135 L.Ed.2d 36 (1996) (*quoting J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928)); *see also Mistretta v. United States,* 488 U.S. 361, 390, 109 S.Ct. 647, 664, 102 L.Ed.2d 714 (1989); *Muller Optical Co. v. EEOC,* 743 F.2d 380, 388 (6th Cir.1984) ("Congress may not delegate legislative authority without establishing a set of standards to guide, direct and circumscribe the exercise of that authority").[4] The Court disagrees, and holds the Act does not unconstitutionally delegate legislative authority to a private individual.

It is doubtful if the discovery provisions of the Act implicates the delegation doctrine. The cases cited by Hermandad deal with the delegation of *legislative* authority. But, the House's power to judge its own elections is

---

ny."). *See also* 61 Cong. Rec. 6392–93 (1921) (stating "[t]here is absolutely no law on the statute books today that will allow a United States district attorney or any other officer of the law to prosecute a man who refuses to come into court when summoned in a contested-election case … It seems to me, Mr. Speaker, there should be teeth in the law that will compel men to be fair and square as citizens and give testimony as it is desired so that a man, whether he is a contestee or contestant, shall have accurate testimony before the body when he comes here.") (remarks of Congressman Tague).

3. By narrowing the definition of permissible "contestant" in an election contest, the FCEA has the effect of limiting the persons with access to the subpoena power. In the debate over adoption of the FCEA, some objected to this narrowing of those permitted to challenge an election and use the subpoena power. *See* 115 Cong. Rec. 30511–13 (Oct 20, 1969) (remarks of Congressman Ryan). In defending the bill, its sponsor, Congressman Abbitt, noted the subpoena power "can be abused" and "[i]f everybody has a right to contest and subpoena witnesses, he can run a House Member up and down the State and no one knows how long it would take to settle it." *Id.* at 30513. Despite this understanding of the potential for abuse, the disagreement was between those who believed the subpoena authority should be limited to actual candidates

and those who believed it should be more widely available. There was no suggestion of eliminating the authority altogether.

4. The delegation of legislative power by Congress has very rarely been held unconstitutional. The only two cases in which the Supreme Court has declared a delegation of legislative power unconstitutional are often described as aberrations and are easily distinguishable. *See* Kenneth Culp Davis and Richard J. Pierce, Jr., Administrative Law § 2.6 (3d ed.1994) (discussing *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) and *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) and concluding "[t]he decisions are best understood in their unique historical context."). In fact, extremely broad delegations of legislative power have been upheld as constitutional by the Supreme Court. *See, e.g., Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (upholding Congress' statutory delegation of broad power to issue binding sentencing guidelines to Sentencing Commission); *Skinner v. Mid–America Pipeline Co.,* 490 U.S. 212, 109 S.Ct. 1726, 104 L.Ed.2d 250 (1989) (concluding the broad delegation of taxing power to an executive agency was constitutional).

not legislative, but judicial.[5] The interests at stake are different from those involved when Congress delegates its legislative power. In the traditional delegation doctrine case, Congress delegates legislative authority, and then ceases to control the exercise of that authority. Here, however, the House maintains continuous oversight during the election contest. It is reasonable that Congress would not detail guidelines for the exercise of the subpoena power with the same level of detail as it must in an unsupervised legislative delegation.

Even if the delegation doctrine is applicable here, the FCEA has established well-ordered standards for discovery. Provision is made for depositions on oral examination, 2 U.S.C. § 386, and the method of service, filing, and notice to parties and witnesses is specified. *Id.* §§ 384, 387. Depositions must seek non-privileged, relevant material, and examination and cross-examination is provided for. *Id.* § 386(b). Time limits are set, *Id.* § 386 (a, c), and a deposition officer authorized to administer oaths is required. *Id.* § 386(d). Attendance can be compelled by subpoena, *Id.* § 386(e), testimony must be recorded and under oath, *Id.* § 386(g), and a party may act through an agent or attorney. *Id.* § 386(f). A party may raise objections, and an opposing party may ask questions through written interrogatories. *Id.* § 386(g). The witness may read the completed opposition, make changes, and sign it, and a party having objections may move to suppress. *Id.* § 386(h). As an alternative, stipulated testimony by affidavit is allowed. *Id.* § 387(c). The completed deposition is certified and filed, with a copy provided to any party or witness. *Id.* § 391.

To facilitate depositions, subpoenas are authorized. *Id.* § 388. A minimum notice to witnesses is set, *Id.* § 388(b), limitations on the place of examination are established, *Id.*

§ 388(c), and the subpoena form is outlined. *Id.* § 388(d). Provision is made to require production of documents, with the opportunity to move to quash or modify if the demand is unreasonable or oppressive, or to obtain reimbursement of production costs. *Id.* § 388(e). Non-compliance with discovery requirements may be punished as a misdemeanor. *Id.* § 390.

The FCEA contemplates the House exercising oversight of discovery proceedings in an election contest. In this way an election contest discovery is similar to discovery proceedings before a district court.[6] In both cases the adversarial system regulates the propriety of a particular subpoena.

The Court concludes Congress has created "intelligible guidelines" for a contestant's exercise of discovery and subpoena power under the Act. Accordingly, the Court holds the FCEA's grant of subpoena power to a private individual is not an unconstitutional delegation of power.

### 4. Due Process

■ Hermandad claims the FCEA's discovery provisions raise due process concerns because the FCEA allows depositions on only two days notice to a party, and only three days notice to a witness, *Id.* §§ 387(a); 388(b), while the Committee Rules allow insufficient time to object and are in conflict with the Act's notice requirements. Hermandad also argues the constitutional rights of third parties are inadequately protected because the FCEA doesn't require notice to third parties whose constitutional rights might be compromised by a deponent's subpoena compliance.

### a. Opportunity for Objection

The FCEA's provisions for objecting to a subpoena do not violate a deponent's right to

---

5. The Supreme Court has described the power to judge elections as "judicial in character." *Barry v. United States ex rel. Cunningham,* 279 U.S. 597, 613, 49 S.Ct. 452, 455, 73 L.Ed. 867 (1929). The creation of a discovery system to aid that function can be analogized to the federal courts' creation of the discovery scheme in the Federal Rules of Civil Procedure, which is not questioned as being an unconstitutional delegation of judicial power.

6. Under the Federal Rules, attorneys and parties have the power to obtain discovery subpoenas just as under the FCEA. Like the Act, the Federal Rules allow parties to obtain discovery "which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). The Federal Rules prohibit discovery of privileged materials. Fed.R.Civ.P. 26(b)(1).

due process under the Fifth or Fourteenth Amendments.

Under the Act the opposing party must be given written notice of a deposition two days before the examination date. *Id.* § 387. Similarly, the FCEA requires a witness be served with a subpoena no later than three days before the day on which attendance is directed. *Id.* § 388. Either may move to quash or modify the subpoena. *See Id.* § 388(e).

Although the parties may disagree as to the adequacy of two or three days notice, the Court cannot conclude the time periods provided are so short that they rise to the level of a due process·violation.[7] Through passage of the Act, Congress has decided two days notice to a party and three days notice to a witness is sufficient. As long as the opportunity to object and the power of the House to quash or modify are available under the Act, due process is satisfied.[8]

There is no necessary conflict between the Committee's Rules and the Act's notice provision. Although Hermandad correctly notes the Committee Rules require seven days notice for a hearing,[9] there is no requirement the Committee hold a noticed hearing on a motion to quash or modify. Rule 6 autho-

rizes the Committee "to sit· and act at such times and places within the United States, whether the House is in session, has recessed, or has adjourned ...." to carry out any of its functions and duties. Committee on House Oversight Rule 6(a). Under its rules, the Committee can, as it has done in this case, take up subpoena contests without a formal hearing, and issue orders to stay depositions until objections may be considered. Neither the Committee's rules nor their application make the Act's discovery scheme unconstitutional.[10]

### b. Third-Party Rights

■ The Court holds the Act's failure to require notice be given to third parties whose constitutional rights might be compromised by a witness' compliance with a. subpoena does not rise to the level of a constitutional defect.

Although this Court has held the Federal Rules of Civil Procedure cannot be engrafted onto the FCEA, *see Dornan,* 955 F.Supp. at 1212, the Federal Rules of Civil Procedure and the case law construing the Rules provide a helpful analogy in determining whether third parties have a constitutional right to notice. The parties have cited no authority,[11]

7. In support of its due process argument, Hermandad cites *Donoghue v. County of Orange,* where the Ninth Circuit affirmed the trial court's determination that one week was not sufficient notice for a subpoena which "sought far reaching and extensive data pertaining to twenty years of employment records...." 848 F.2d 926, 931 (9th Cir.1988). *Donoghue,* however, does not support Hermandad's position. The court there did not hold one week was *constitutionally* insufficient; it merely stated the district court's conclusion one week was not· sufficient under the circumstances present there was not an abuse of discretion.

8. At oral argument, Hermandad argued the Act is both unconstitutional on its face and as applied. According to Hermandad, the slow pace at which the Committee has decided motions to quash is a violation of due process. However, neither Congresswoman Sanchez nor Hermandad has shown either's constitutional rights have *actually* been violated. The fact motions to quash remain outstanding is not sufficient for a finding the Act is unconstitutional as applied.

9. Rule 9 requires:
The Chairman, in the case of hearings to be conducted by the Committee, shall make pub-

lic announcement of the date, place and subject matter of any hearing to be conducted on any measure or matter at least 1 week before the commencement of that hearing unless the Committee determines that there is good cause to begin such hearing at an earlier date.
Committee on House Oversight Rule 9(a).

10. Even if the Rules create a slow or cumbersome procedure, Hermandad has· not made "a clear showing of such arbitrary and improvident use" of Congress' power as to constitute a denial of due process of law. *See Barry,* 279 U.S. at 620, 49 S.Ct. at 457.

11. In support of its position, Hermandad cites California law which requires notice be given to individuals whose bank records have been subpoenaed. *See, e.g., Valley Bank of Nevada v. Superior Court,* 15 Cal.3d 652, 125 Cal.Rptr. 553, 542 P.2d 977 (1975); *Sehlmeyer v. Dept. of General Services,* 17 Cal.App.4th 1072, 21 Cal.Rptr.2d 840 (1993). These cases, however, base the notice requirement on the California Constitution's right of privacy, not on any federal right of privacy. The election contest at issue is based exclusively on the Federal Contested Elections Act, a federal question to which federal law would apply.

and the Court finds none, which holds a third party has such a notice right under federal law.[12]

Hermandad contends FCEA subpoenas directed toward two specific subjects potentially compromise the rights of third parties: those to obtain membership lists of an organization, and those directed toward bank records.

Membership lists of organizations, especially those of a political nature, are potentially protected under the First Amendment. *See NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958); *see also Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). There is at least the potential for a violation of the constitutional rights of Hermandad's members when the organization's records are subpoenaed.

The organization, however, has standing on behalf of its members to raise constitutional objections to the production of its membership lists. *See Hunt v. Wash. State Apple Advertising Comm'n.,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). This can be done on a motion under the Act to quash or modify the subpoena. 2 U.S.C. § 388(e). The FCEA provides sufficient process to prevent the violation of the First Amendment rights of Hermandad's members.

The potential for membership list production being a constitutional violation should be addressed on motion to the House, not by attempting to have the court hold the Act's discovery provisions unconstitutional. The Supreme Court has implicitly rejected such a per se approach to alleged First Amendment objections raised in the context of discovery. *See, e.g., Bates v. City of Little Rock,* 361 U.S. 516, 523–25, 80 S.Ct. 412, 416–18, 4 L.Ed.2d 480 (1960) (reversing convictions upon failure to disclose membership lists because interference with associational rights outweighed government interest in disclosure). A party objecting to disclosure must first make out a prima facie case of an encroachment on liberty. Only then does the burden shift to the proponent to show there is a compelling need for the discovery. *New York State Nat. Organization for Women v. Terry,* 886 F.2d 1339, 1355 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

Concerning the discovery of third parties' bank records, "an American depositor has no reasonable expectation of privacy in copies of his or her bank records...." *In re Grand Jury Proceedings,* 40 F.3d 959, 963 (9th Cir. 1994), *cert. denied,* 515 U.S. 1132, 115 S.Ct. 2558, 132 L.Ed.2d 811 (1995) (citing *United States v. Miller,* 425 U.S. 435, 442, 96 S.Ct. 1619, 1623–24, 48 L.Ed.2d 71 (1976)). Although this analysis is usually raised in a Fourth Amendment context, it is equally applicable here. As the Supreme Court held in *Miller,* where an individual's Fourth Amendment rights are not implicated, obtaining these documents does not violate protected rights. *See Miller,* 425 U.S. at 445, 96 S.Ct. at 1625. Accordingly, the Act's failure to require notice to bank depositors whose records are subpoenaed is not unconstitutional.

5. *Separation of Powers*

■ Sanchez contends the FCEA's discovery provisions violate the principle of separation of powers because they divest a federal court of authority to review the scope of subpoenas, and they confer on a Congressional committee the authority to decide the legitimacy of a judicially-issued subpoena.[13] This, Sanchez argues, is an unconstitutional delegation of authority to the legislative

---

12. *See Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir.) *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994) ("Appellant fails to state a claim that the state actors denied him his procedural due process rights by not notifying him of the subpoena duces tecum. Appellant has submitted no legal authority to this Court, and we have found none in our independent research, that creates an affirmative duty of a nonparty or a governmental official in possession of documents to notify the owner of the subpoenaed documents.").

13. In effect, Sanchez is arguing this court is incorrect in holding its sole authority is to issue subpoenas regular on their face and motions to quash or modify must be handled by the House. The constitutionally correct ruling, Sanchez contends, is that the court has power to supervise its own subpoenas.

branch over a "case" pending. in federal Court.[14] In support of her position, Sanchez cites the fundamental principle that the " 'judicial power of the United States' must be reposed in an independent Judiciary." *Northern Pipeline Constr. Co.*, 458 U.S. 50, 60, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982); *see also Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986); *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

The separation of powers concept is probably not applicable in this situation. In making her separation of powers argument, Sanchez relies on cases holding "Congress cannot 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.' " *Northern Pipeline Constr.*, 458 U.S. at 69 n. 23, 102 S.Ct. at 2871 n. 23 (*quoting Den ex dem Murray v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284, 18 How. 272, 15 L.Ed. 372 (1855)). However, these cases apply the concept only to matters of "private right." *See, e.g., Crowell*, 285 U.S. at 50, 52 S.Ct. at 292 (distinguishing between cases of "private right" and those of "public right," that is, "those which arise between the government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments"); *Northern Pipeline Constr. Co.*, 458 U.S. at 67–68, 102 S.Ct. at 2869–70; *Ex parte Bakelite Corp.*, 279 U.S. 438, 451–52, 49 S.Ct. 411, 413–14, 73 L.Ed. 789 (1929). By contrast, in matters of "public right," " 'Congress may reserve to itself the power

to decide, may delegate that power to executive officers, or may commit it to judicial tribunals.' " *Crowell*, 285 U.S. at 50–51, 52 S.Ct. at 292 (*quoting Ex parte Bakelite Corp.*, 279 U.S. at 451, 49 S.Ct. at 413). This election contest is a matter of "public right."

Even if the separation of powers concept is applicable, it has not been violated here. The Supreme Court's recent separation of powers cases raise the question whether Congress has aggrandized its own role in a function not constitutionally entrusted to it. *See, e.g., Morrison v. Olson*, 487 U.S. 654, 678, 108 S.Ct. 2597, 2612, 101 L.Ed.2d 569 (1988) (placement of the appointment power of an Independent Counsel in the Judicial Branch to investigate and prosecute crime, without summary removal power in the President); *Bowsher v. Synar*, 478 U.S. at 715, 106 S.Ct. at 3182–83 (retention of removal power over the Comptroller General whose functions entailed executive responsibilities); *Chadha*, 462 U.S. at 957–58, 103 S.Ct. at 2787–88 (use of the legislative veto without passing new legislation subject to the President's veto).

Here, the power to judge its elections is constitutionally vested in the House alone. U.S. Const. art. I, § 5, cl. 1. The exclusive nature of this mandate was confirmed in *Morgan v. United States*, 801 F.2d 445, 447 (D.C.Cir.1986), *cert. denied*, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987) ("It is difficult to imagine a clearer case of 'textually demonstrable constitutional commitment' of an issue to another branch of government to the exclusion of the courts" (citing *Baker v.*

---

**14.** Sanchez also argues the Court has inherent authority to "protect the integrity of its processes," and therefore it must have jurisdiction to interpret and enforce its subpoenas. *See Matter of Certain Complaints Under Investigation*, 783 F.2d 1488, 1496 (11th Cir.), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986). According to Sanchez, this inherent authority includes the authority to rule on motions to quash FCEA subpoenas.

In *Matter of Certain Complaints*, the Eleventh Circuit held it had the authority to enforce subpoenas it issued pursuant to the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 332(d)(1), 372(c)(9)(A) (JCDA). Comparing the language of the JCDA and the Federal Rules of Civil and Criminal Procedure, the Eleventh Circuit concluded Congress "was legislating in

[the JCDA] against the backdrop" of the Federal Rules. *Id.* Accordingly, the court relied on the Federal Rules in concluding "the court under whose seal the subpoena was issued must have jurisdiction to enforce its subpoena and vindicate its own process, as Fed.R.Civ.P. 45(f) and Fed. R.Crim.P. 17(g) recognize." *Id.*

Here, the Act was not legislated against the backdrop of the Federal Rules. As this Court has already held, the Federal Rules cannot be engrafted upon the Act. *See Dornan*, 955 F.Supp. at 1212. Contrary to the JCDA, the Act at issue here has created a penalty *other than* contempt for failing to comply with a subpoena: a witness' failure to comply is made a misdemeanor punishable by fine or imprisonment. 2 U.S.C. § 390.

*Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962))).

In the review of its discovery process, Congress is not seizing a function not constitutionally entrusted to it, and there is no separation of powers violation. On the contrary, the pending "case" is the election contest before the House, and there is no "case" pending in federal court. Already having the power to adjudicate all phases of its election contest under Article I, section 5 of the Constitution, it cannot be said exercise of this power "impermissibly trespass[es] upon the authority" of the Judicial branch. *See Morrison v. Olson,* 487 U.S. at 680, 108 S.Ct. at 2613.

Sanchez also contends Congress cannot give a court part of its judicial power—the power to issue subpoenas—without ceding to it the whole of that particular judicial power—the power to review and enforce those subpoenas. She argues the House cannot delegate a power to the court, yet retain the ability to "interfere" with that power. *See Chadha,* 462 U.S. at 954–55, 103 S.Ct. at 2785–86.[15]

Sanchez is correct in noting *Northern Pipeline* requires "the judicial power" be exercised by an Article III court. 458 U.S. at 58–60, 102 S.Ct. at 2865. But, in the context of the FCEA, the Court is not called on to exercise its own judicial power. Through the Act, Congress has authorized the Court to perform a very limited, purely ministerial part of the House's judicial role: to issue subpoenas. As the Supreme Court held in *Morrison,* powers granted to the judiciary which are "themselves essentially ministerial," do not violate the principle of separation of powers. *See Morrison,* 487 U.S. at 681, 108 S.Ct. at 2614.

By requiring courts to issue subpoenas upon a contestant's application, Congress has not trespassed on the judicial branch. The performance of this function does not compromise the independence or integrity of the judicial branch. On the contrary, by limiting the scope of the judiciary's involvement to issuing subpoenas, the Act *maintains* the line between the political and judicial branches. In this way, the judiciary is kept out of the charged and partisan environment of an election contest, as is required by the Constitution.

The Court holds the discovery subpoena provision of the Federal Contested Elections Act does not violate the principle of separation of powers.

## B. *MOTION TO DISQUALIFY COUNSEL*

■ In May 1997, Sanchez moved to disqualify Dornan's counsel from appearing before this Court for alleged misconduct concerning how he made use of various subpoenas. The Court took the motion off calendar, holding Sanchez' motion must be asserted in the House, not the Court. Sanchez has renewed her motion to disqualify.

The court has authority to regulate the conduct of attorneys appearing before it. But, it is a matter of discretion when and how to exercise that authority. Here, the conduct complained of was not claimed misconduct in the obtaining of the subpoenas from the court, but in the use of the subpoenas afterward. This is within the House's purview.

The Constitution and the FCEA place control over election contests in the hands of the Legislature—the political branch of govern-

---

**15.** In *Chadha,* the Supreme Court struck down a statute permitting the House to "veto" the Attorney General's determination to suspend deportation of an individual alien. Once the authority to suspend a deportation was delegated to the Attorney General by Congress, the Court concluded the House could not later interfere with the exercise of that delegated authority without following the legislative procedures set out in Article I of the Constitution. *Id.* at 954–55, 103 S.Ct. at 2785–86.

*Chadha* is not controlling here. Because *Chadha* dealt with a delegation of legislative power,

the Court held the House could not *unilaterally* "veto" the exercise of that power. According to the Court, any action by the House which would be legislative in nature (which is how the Court construed the "veto"), must be taken by Constitutional procedures, *i.e.,* through bicameral passage and presentment to the President. *Id.* The Court held "Congress must abide by its delegation of authority until that delegation is legislatively altered or revoked." *Id.* That constraint is not present here.

ment. An election contest, and allegations of misconduct in its discovery and adjudication, involve political questions which courts should refrain from adjudicating. *See Baker*, 369 U.S. 186, 82 S.Ct. 691; *see also Morgan*, 801 F.2d 445. Accordingly, the Court exercises its discretion and declines to rule on Sanchez' Motion. The proper forum for such a motion is the House of Representatives.

## C. *OBJECTION TO TIME OF SERVICE*

■ Hermandad contends the notice to it of the district attorney's deposition was not timely given. It contends notice was improperly delivered at the end of a business day on the second day before the scheduled deposition, by FAX and with no proof of service. The court holds this objection is not to a defect appearing on the face of the subpoena, and must be addressed to the House of Representatives, not to this court.

In its March 1997 order in this matter, the court ruled that under the FCEA courts only have authority to issue subpoenas regular on their face, and disputes outside that narrow authority must be addressed to the House. Since that order was made, the parties have asserted various subpoena objections to the court, and the court has issued several orders further defining, within that broad principle, which subpoena objections may be resolved by the court and which must go to the House.

The court determined several of the matters presented to it fell within a determination whether a subpoena is "regular on its face," and decided the matter. For instance, the court declined to issue a subpoena to a party in Florida, holding that, on its face, this was outside the geographical area authorized by the Act. A subpoena format not specifying the deposition officer or containing blanks was rejected as irregular on its face. However, a deposition for an entity's "custodian of records" was ruled regular on its face, as a sufficient identification of a "person" under section 386(a). And, a deposition for a "hearing" was rejected as irregular since the Act only authorizes *deposition* subpoenas.

However, the court held that various other subpoena disputes presented to it did not involve irregularities on the subpoena face, and so must be presented to the House for resolution. The court held a subpoenaed state or federal agency desiring to assert a statutory privilege must present it to the House. Several objections that subpoenas were overbroad, burdensome, or requested improper disclosures were held to raise non-facial defects that must be asserted to the House.

As held in the court's March 1997 order, the court's sole authorized participation under the Act is to issue requested deposition subpoenas apparently regular on their face. Hermandad's objection that a deposition notice was improperly served is not a defect appearing on the face of the subpoena. Under the Constitution and the FCEA, this aspect of the election contest must be presented to the House of Representatives for decision.

## III. *DISPOSITION*

Concerns that the House's determination of this election contest may have been cumbersome and far from the "quick, decisive" standard stressed by *Morgan*, 801 F.2d at 450, or that the subpoena process may have been overused, must be addressed to the House itself. Under the Constitution's mandate, the House has the power to make appropriate rule changes to make its system work better.

The court holds the discovery subpoena provisions of the Federal Contested Elections Act, 2 U.S.C. § 381 and following, are constitutional. The court declines to rule on the motion to disqualify contestant's counsel, and rules an objection that a deposition notice was untimely served must be addressed to the U.S. House of Representatives.

At the request of the parties, and because this order involves a novel issue and a controlling question of law on which there is substantial ground for difference of opinion, and an immediate appeal from this order may materially advance the ultimate interests of justice and termination of the matter, the Court hereby certifies this opinion for

**1328**

interlocutory review under 28 U.S.C. § 1292(b).